In re Louis Wesley SERUNTINE, aka Lou Seruntine, aka L.W. Seruntine; dba Seruntine Transportation Co., Inc., a corporation, dba Acclaim Tank Transport, & Acclaim Tank Transporters, Debtor.

Bobby and/or Donna COLE, dba Cole Trucking, Plaintiffs,

v.

Louis Wesley SERUNTINE, Defendant.

Bankruptcy No. LA83–17544 BR.
Adv. No. LA83–40271 BR.

United States Bankruptcy Court, C.D. California.

Dec. 21, 1984.

Bobbie F. Albanese, Robert Fuller, Whittier, Cal., for plaintiff.

Jerome M. Applebaum, El Monte, Cal., for debtor/defendant.

Martin A. Rechnitzer, San Fernando, Cal., Trustee.

## MEMORANDUM OF OPINION DENYING DEBTOR'S DISCHARGE

BARRY RUSSELL, Bankruptcy Judge.

### INTRODUCTION

This matter is before the Court upon the plaintiffs' complaint objecting to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

The complaint alleges that the debtor knowingly and fraudulently made a false oath on Schedule B–1 of his petition filed September 21, 1983 and at the meeting of creditors on October 25, 1983, with regard to value of his residence located at 15951 Maracaibo Place, Hacienda Heights, California.

### FACTS

Debtor valued his residence at $75,000.00 both on his Schedule B–1 and at the meeting of creditors held pursuant to 11 U.S.C. § 341. Debtor also claimed the residence as exempt under the California Code of Civil Procedure in the amount of $45,000.00 and listed trust deeds of $57,000.00 on Schedule A–2.

At the trial on plaintiffs' complaint, debtor continued to insist that the value was only $75,000.00. To support his position, debtor called Walt Ferrari, a real estate broker and licensed building contractor, who testified that the residence was worth approximately $75,000.00–$95,000.00, because of its extensively damaged condition.

Plaintiffs' witnesses, Ron Roberts, a real estate broker and licensed general contractor and Richard O. Meltvedt, an A.I.A. appraiser, testified that no extensive repairs were needed, as alleged by debtors expert, and that the value of the residence was at least $120,000.00–$127,500.00.

Debtor lives in an area where the homes are valued within the $145,000.00–$165,000.00 range. Plaintiffs' witnesses testified that with the expenditure of less than $15,000.00, debtor's residence would be valued well within that range.

### ISSUE

The question before the Court is whether the debtor should lose his discharge because he knowingly and fraudulently understated the value of his residence on his schedules. The difficulty is that determining whether the debtor's undervaluation was intentional depends on the circumstances of each case.

### DISCUSSION

"Market Value" is generally defined as "The price which a reasonable seller who desires to sell but is not required to sell would demand for the property and the price which a reasonable buyer who desired to buy but was not required to buy would pay for the same, assuming a reasonable time for negotiations and explorations of alternatives." [1]

The factors that experts usually consider in evaluating residential property are comparable sales and the cost of building a comparable structure. Although not an exact science, the estimation of property value should be relatively accurate and credible, when proper procedures and techniques are employed which use substantial and accurate information.

A debtor however, is usually merely a home owner, not an expert witness. What then must he do to fullfil his duty to truthfully complete his schedules?

1. *United States v. 91.90 Acres of Land, etc.,* 586 F.2d 79, 86 (8th Cir.1978) cert. denied 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979).

A debtor who lives in an area in which his home is comparable to those of his neighbors will usually have a good idea of its value from simply living in the area and talking to his neighbors about recent sales. His property tax assessment will give him another guide as to value, and he should also check with a local real estate broker.

Naturally, in an area of more expensive homes a debtor may need to contact several independent brokers. A written appraisal would usually be required in only the most unusual circumstances involving unique property. In short, in the typical case, it is very easy for a home owner to realistically determine the fair market value of his home.

Brokers may, of course, give a range of values for the property. Depending upon the purpose of the appraisal, the debtor may wish to value the property at the lower or higher end of the range, as illustrated by the following quote:

> "In certain social circles, it is not uncommon to hear bards of a sort jape that every rancher or farmer has three different valuations for his real property. The first, and highest is used to get loans from lending institutions. The second, more moderate amount, is the value he puts on land for sale. The third, rock bottom price, is the land's value for tax purposes ..."[2]

If the issue is whether the property is exempt, as in this case, the debtor would wish to choose the lower end of the range in order to minimize the equity in the property and thereby maximize the exemption. Here, for example, if debtor's $75,000.00 valuation is accepted, the entire equity of $18,000.00 is exempt under California law. At a value of $120,000.00, however, the equity is $63,000.00, of which only $45,-000.00 is exempt, leaving $18,000.00 for creditors of debtor's bankruptcy estate.

If the issue is the lifting of the automatic stay,[3] the debtor would wish to choose the higher value of the property in order to maximize his equity in the property.

The question then is what value the honest debtor should choose. The safest route for the debtor would be to choose a value in the middle of the range unless he has some specific reasons for choosing a different figure.

It is extremely difficult to define or identify the line which the debtor must not cross lest he risk losing his discharge because he falsely understated the value of his property on his schedules. Nevertheless, as Mr. Justice Stewart said[4] in a slightly different context, "I know it when I see it", and in this case the debtor, by scheduling his home at approximately one-half of its fair market value, has crossed that line.

### CONCLUSION

This Court concludes that debtor's undervaluation of the market value of his residence on his Schedule B-1 and at the meeting of creditors was made knowingly and fraudulently.

Therefore, Debtor's discharge is denied pursuant to 11 U.S.C. § 727(a)(4)(A).

IT IS SO ORDERED.

---

**2.** Lawrence H. Averill, Jr., Estate Valuation Handbook, P. 3 (1983).

**3.** See 11 U.S.C. § 362.

**4.** *Jacabellis v. Ohio*, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793, 803 (1964).