**In re Maurice & Marie OZER, Debtors.**

**Bankruptcy No. 893–87027–478.**

United States Bankruptcy Court,
E.D. New York.

May 23, 1997.

Ochs & Goldberg, L.L.P. by Martin P. Ochs, New York City, for Debtors.

Zavatsky & Mendelsohn by Allan B. Mendelsohn, Syosset, NY, for trustee.

# DECISION DENYING APPLICATION OF ALLAN B. MENDELSOHN, AS CHAPTER 7 TRUSTEE, FOR ORDER REOPENING CHAPTER 7 CASE

DOROTHY EISENBERG, Bankruptcy Judge.

This matter is before the Court pursuant to a motion made by Allan B. Mendelsohn, the Chapter 7 Trustee (the "Trustee"), seeking to reopen a case closed more than one and one-half years ago pursuant to 11 U.S.C. Section 350(b) and seeking the reappointment of Mendelsohn as the Trustee to permit him to administer an asset consisting of a personal injury action duly scheduled by Maurice and Marie Ozer (the "Debtors") in their petition and subsequently abandoned by the Trustee pursuant to 11 U.S.C. Section 554(c). Based on the facts of the case as initially recited by the Trustee, the Court finds that the Trustee lacks standing to make a motion to reopen the case, and there is insufficient cause to grant the extraordinary relief requested by the Trustee.

## FACTS

The Debtors filed a petition for relief under Chapter 7 of the Bankruptcy Code on December 13, 1993. By notice of appointment dated February 2, 1994, the Trustee was appointed as interim trustee, and was thereafter qualified and became the permanent Trustee pursuant to Section 702 of the Bankruptcy Code. The Trustee is an experienced practitioner, and has been a Chapter 7 Trustee for a number of years.

Pursuant to the Court's Notice of Commencement of Chapter 7 Case, January 27, 1994 was the date set for the meeting of creditors (the "Meeting of Creditors") to be conducted pursuant to Section 341 of the Bankruptcy Code. The Debtors appeared at the Meeting of Creditors and testified truthfully and accurately regarding their liabilities in response to the Trustee's questions regarding the information provided in the Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs. During the Meeting of Creditors, the Trustee examined the Debtors regarding, among other things, the personal injury claim (the "Personal Injury Claim") set forth both in their Schedules of Assets and Liabilities and Statement of Financial Affairs. The Personal Injury Claim arises out of an automobile accident in which Maurice Ozer was seriously injured on December 22, 1990. As a result of the accident, Mr. Ozer has been left with permanent injuries, including nerve damage. The Debtors are counting on a fresh start that the filing of a petition promises, and are attempting to return to a life of normalcy almost seven years after the catastrophic accident occurred. The Meeting of Creditors was adjourned to and concluded on April 19, 1994, and there are no allegations that the Debtors were anything but truthful and candid regarding the disclosure of their assets and liabilities.

By order of the Court dated June 9, 1994, the Trustee's application to retain his firm to serve as the estate's bankruptcy counsel in the case was approved. By application of the Trustee dated May 16, 1994 and upon an Affidavit of Disinterest sworn to on July 20, 1994, the Trustee sought the Court's approval of his retention of Frank W. Zito, Esq., to serve as the estate's special state court litigation counsel in the case to pursue the Personal Injury Claim pursuant to the terms of a contingency retainer agreement which had been entered into by Mr. Zito with the Debtors prepetition. The retention was approved and an order of retention of Zito as special counsel was entered on August 18, 1994.

Almost one year after retaining State Court litigation counsel, the Trustee filed his Report of No Distribution on August 11, 1995, and took no action to administer this asset from that time until he was recently contacted by the Debtors' State Court counsel as to a possible settlement. The Trustee's Report of No Distribution provides in pertinent part:

I have made diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law.

In his initial motion papers to reopen this case, the Trustee represented that the Re-

port of No Distribution was filed due to the fact that the scheduled assets appeared to consist of property which were subject to exemptions, had no equity or were of inconsequential value in excess of liens and, therefore, could not be promptly and effectively liquidated for the benefit of creditors. The Trustee further represented that it was his intention to reopen the case in the event that the Personal Injury Claim settled, resulting in a benefit to the creditors of the Debtors.[1]

Subsequent to the filing of the Report of No Distribution and on September 27, 1995, the Court entered a Final Decree, which provides in pertinent part:

IT IS ORDERED THAT:

—Allan B. Mendelsohn (Trustee) is discharged as a trustee of the estate of the above-named debtor(s) and the bond is canceled;

—The Chapter 7 case of the above-named debtor(s) is closed.

The Final Decree was docketed and made a part of the record of this case.

After the case was closed, the Trustee received a letter dated October 2, 1995 from the law firm of Giuffre & Kaplan, P.C., which had substituted as counsel to the Debtors in the personal injury proceeding. Mr. Kaplan of that firm informed the Trustee of the fee arrangement which had been reached with the two prior counsel and forwarded a consent to change attorneys with a request that the Trustee obtain Bankruptcy Court approval of his retention of that firm as substitute counsel for the Debtors in the State Court action. Although the case had been closed, an order was entered on October 19, 1995 approving the substitution of the firm of Giuffre & Kaplan, P.C. as the Trustee's special State Court litigation counsel in place of Frank W. Zito, Esq. Such order was entered by the court clerks in error, as the case had already been closed.

In February 1997, the Personal Injury Claim was settled in the State Court action. By motion dated April 1, 1997, the Trustee moved to reopen the Debtors' bankruptcy case pursuant to 11 U.S.C. Section 350(b), Bankruptcy Rule 5010 and Rule 44 of the Local Rules of Bankruptcy Procedure for the Bankruptcy Court of the Eastern District of New York and sought reappointment as trustee so as to permit submission of the proposed compromise to the Bankruptcy Court for approval. The Trustee served notice only on the Debtors and failed to give notice of the motion to creditors of the estate. He is not acting at the request of any creditor.

The Trustee's motion to reopen the case was opposed by the Debtors on the grounds that: (i) the Trustee lacks standing to seek the entry of an order reopening this case; and (ii) the closing of the bankruptcy case after the filing of the Report of No Distribution effectuated an abandonment of the Personal Injury Claim to them and was no longer available for administration by the Trustee.

### DISCUSSION

Pursuant to Section 554 of the Code, there are three methods by which property of the estate can be abandoned by the Trustee. Property which is burdensome to the estate can be abandoned after notice and hearing at the request of the trustee, or by order of the Court after notice and hearing upon the request of a party in interest. 11 U.S.C. Sec. 554(a), (b) (West 1995). Subsection (c) of Section 554 also provides for a "technical abandonment" of property of the estate as follows: "Unless the Court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title."

---

1. At the hearing held on April 10, 1997, and in his Memorandum of Law filed on May 12, 1997, the Trustee alleged that the No–Asset Report was in fact filed in error by his office. The Trustee further alleged that there was never any intention to have the case closed. The Trustee has provided the Court with no additional evidence to support his new allegation that the closing of the case was inadvertent. Therefore, the Court accepts the facts as originally alleged by the Trustee in his initial motion, and shall not permit the Trustee to change his version of the facts to bolster his legal position.

In this case, it is clear that the filing of the Report of No Distribution effectuated a technical abandonment of the Personal Injury Claim. Further, the entry of the Order substituting special counsel to continue to prosecute the Personal Injury Claim was of no effect because the Order was entered after the case had been closed. The Trustee's motion to reopen the case must therefore be evaluated in light of the procedural posture of the case, including the fact that the Trustee took the action of filing the Report of No Assets and was discharged of his duties pursuant to the Final Decree. The filing of the Final Decree also triggered the closing of the case.

### Trustee's Standing

 The first issue raised by the Debtors is whether the Trustee has standing to make a motion to reopen the case. While there is no doubt that the Court has the discretion to determine whether to reopen a bankruptcy case, this Trustee has been discharged, and is technically no longer a party to the case. In this case, the Trustee had all necessary information as to the assets of the estate and cannot claim lack of knowledge of the asset or misleading information as to its value. Furthermore, the Trustee is not acting at the request of creditors, who would have a stake in the matter, and the creditors received no notice of the motion. In determining the issue of whether a Chapter 7 trustee could have standing to make a motion to reopen a case, the courts have considered the language of the technical abandonment statute, which begins with "[u]nless the Court orders otherwise." Courts have held that this language gives the court the authority to reopen a bankruptcy case and undo a technical abandonment under appropriate circumstances. See Neville v. Harris (In re Neville), 192 B.R. 825 (D.N.J.1996); and In re Shelton, 201 B.R. 147 (Bankr.E.D.Va. 1996). In determining whether appropriate circumstances exist, the courts have taken into consideration the merits of the motion. If the denial of the motion would result in an injustice to creditors and the courts have concluded that the trustee's actions did not amount to an intelligent decision with respect to the abandonment, then courts have been more likely to find that appropriate circumstances exist. See Shelton at 156 (A trustee would have standing to move to reopen a case where the trustee was not initially afforded the ability to make an informed decision with respect to administering an asset). In contrast, if the debtor had substantially improved the otherwise abandoned property, or if the failure to properly administer the property had been the trustee's fault, or if significant time had passed once the trustee had abandoned the property, then a motion to reopen should be denied. Id. The circumstances do not warrant a finding that the Trustee in this case has standing to bring this motion to reopen the case.

### Abandonment Pursuant to 11 U.S.C. § 554(c)

 "It is a principle of uniform application that once an asset of the estate has been abandoned by the trustee, it is no longer part of the estate and is effectively beyond the reach and control of the trustee." In re Sutton, 10 B.R. 737, 739 (Bankr.E.D.Va.1981) (citing In re Polumbo, 271 F.Supp. 640 (W.D.Va.1967)); In re Killebrew, 101 B.R. 471 (Bankr.S.D.Miss.1988); Matter of Ayoub, 72 B.R. 808 (Bankr.M.D.Fla.1987). Such abandonment is irrevocable even if the trustee subsequently discovers that the abandoned asset has a value which is greater than what the trustee initially believed. In re Matter of Lintz West Side Lumber. Inc., 655 F.2d 786 (7th Cir.1981); In re Atkinson, 62 B.R. 678 (Bankr.D.Nev.1986).

 The only universal exceptions to the finality of abandonment of an asset by the trustee are where (i) the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset; or (ii) the debtor has failed to list the asset on the schedules and petition altogether. In re Sutton, 10 B.R. at 740. Courts have also found exceptions where the trustee's abandonment was the result of a mistake or inadvertence, and no undue prejudice will result in revocation of the abandonment. Jackson Park Realty Company, Inc. v. Williams (In re O'Neill Enterprises, Inc.), 547 F.2d 812 (4th Cir. 1977); and In re Sutton, 10 B.R. at 740–741.

The premise behind these exceptions appears to be a finding by the courts that the abandonment could not have been knowing and intentional if the above flaws existed. In effect, abandonment of an asset will not be deemed irrevocable if the trustee has been misled as to the nature or existence of the asset, and in certain instances, if the abandonment takes place due to particularly relevant clerical mistake or inadvertence of the trustee.

■ In this case, the Trustee is alleging that the abandonment was not intentional in that the Trustee planned to make a motion to reopen the case and administer the Personal Injury Claim in the event a settlement of the Personal Injury Claim was reached. However, this is not one of the noted exceptions to the general principle that abandonment of an asset by a trustee is irrevocable. This Court would caution any Trustee not to presume that such actions will be lawfully sanctioned. Once an asset is abandoned, it cannot be reached by the trustee in the event he changes his mind. *In re Hill*, 195 B.R. 147 (Bankr.D.N.M.1996). The Trustee's decision to file the Final Report of No Assets was a conscious decision, based on his review of the Debtors' assets and an apparent determination that the Personal Injury Claim was not worth pursuing on behalf of the estate. The Trustee's subsequent decision to move to reopen the case and administer the asset appears to have occurred only as a result of the possibility of a settlement. The Trustee is charged with knowledge of the Bankruptcy Code and Rules, and cannot cavalierly recall the asset back into the estate at this point in time. To sanction the Trustee's conduct would be in complete disregard of the axiom that once an asset is abandoned, the asset is out of the reach of the Trustee and the creditors. In fact, when a trustee abandons the estate's interest in property, the abandonment is to the Debtor as a matter of law. *In re Bouldin*, 196 B.R. 202 (Bankr.N.D.Ga. 1996). Unfortunately, the Trustee never advised the creditors of this estate, who might be the appropriate parties in interest, to request a reopening of the case.

Furthermore, the Debtors have relied on the Trustee's decision to abandon the Personal Injury Claim, and would now be prejudiced if the case were to be reopened to administer the now-valuable asset, where the Debtor never secreted or interfered with a proper administration of this asset on behalf of the creditors of the estate.

Any reliance by the Trustee on the decision reached by the District Court for the District of New Jersey in *Neville v. Harris (In re Neville)*, 192 B.R. 825 (D.N.J.1996) is equally unavailing. In *Neville*, the District Court was called upon to determine whether the Bankruptcy Court properly found that the trustee never actually abandoned a lawsuit commenced by the debtors prepetition as a matter of law under Section 554(c) of the Bankruptcy Code. In determining whether the trustee's actions constituted an abandonment of the asset, the District Court reviewed the trustee's actions during the pendency of the case. The trustee did question the debtors regarding the lawsuit, but the debtors failed to provide the trustee with the additional information she had requested. The trustee alleged that as a result, she had insufficient information to determine whether to administer the asset. However, in the case before the Court, the Trustee is not alleging that the Debtor's have failed to provide sufficient information regarding the Personal Injury Claim. In addition, the Trustee is not arguing that abandonment of the asset did not occur. Rather, the Trustee is seeking to obtain a revocation of the abandonment of the Personal Injury Claim. As discussed above, the Trustee has provided insufficient grounds for the Court to grant his motion.

### CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. Section 1334.

2. This is a core matter pursuant to 28 U.S.C. Section 157(b)(2)(a) and 152(b)(2)(O).

3. The Debtors fully disclosed the nature of the Personal Injury Claim in the petition and schedules and at the Section 341 hearing. The Trustee's decision to abandon the asset was made after the Trustee had an opportunity to inquire as to the specifics of the Personal Injury Claim, and this motion ap-

pears to have been prompted by the recent settlement reached in the personal injury action.

4. The motion by the Trustee to reopen the case pursuant to 11 U.S.C. Section 350(b) to administer an asset which had been abandoned by him is denied as (i) the Trustee lacks standing to make a motion to reopen the case, and (ii) there is no just cause to revoke the Trustee's abandonment of the assets. Settle an order in accordance with this decision.