**In re Glenn M. FLOOD d/b/a Glenn Flood Properties and Glenn Flood Publishing, Debtor.**

**Bankruptcy No. 94–20245.**

United States Bankruptcy Court, W.D. New York.

June 7, 1999.

Douglas J. Lustig, Saperston & Day, P.C., Rochester, New York, for debtor.

Charles A. LoFaso, Municipal Attorney, Rochester, New York, for City of Rochester.

## BACKGROUND

JOHN C. NINFO, II, Bankruptcy Judge.

On February 11, 1994, Glenn M. Flood (the "Debtor") filed a petition initiating a Chapter 7 case. On the schedules and statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that: (1) he was the fee simple owner of eleven rental properties located in the City of Rochester, New York, including a four-family rental property at 34–36 Copeland Street ("Copeland Street"); (2) Copeland Street had a current fair market value of $50,000.00, but it was subject to a first mortgage of $96,000.00 in favor of Shawmut Mortgage Company ("Shawmut"), a second mortgage of $20,000.00 in favor of PFS Investments, and a third mortgage in favor of Chase Manhattan Bank; (3) the City of Rochester had claims against him for undetermined amounts because of

"multiple delinquent real estate taxes, assessments, etc. against all properties"; (4) for the previous twelve years he had been employed as a software technician at Eastman Kodak Company; (5) as set forth on his Chapter 7 Individual Debtor's Statement of Intention (the "Statement of Intention"), he intended to surrender Copeland Street to the mortgage holders; and (6) he had done business as Glenn Flood Properties.

On February 22, 1994, the Bankruptcy Court Clerk's Office mailed a Notice of the commencement of the Debtor's Chapter 7 case to all of the scheduled creditors, which included the City of Rochester.[1] On March 23, 1994, the Debtor's Trustee filed a report of no distribution (the "No Asset Report"), which indicated that the Debtor's estate had been fully administered because there were no non-exempt assets that the Trustee had elected to administer. Before an Order of Discharge (the "Discharge Order") was entered on April 17, 1994 and the Debtor's Chapter 7 case was closed on June 24, 1994, orders were entered which granted mortgagors relief from the automatic stay in connection with several properties other than Copeland Street.

On February 4, 1999, the Debtor filed a motion (the "Contempt Motion") which requested an order finding the City of Rochester in contempt for having violated the automatic stay provided for by Section 362 and awarding damages to the Debtor for the City's violation of the stay. The Contempt Motion alleged that: (1) the Debtor had scheduled Copeland Street as an asset and listed the City of Rochester as a creditor in connection with the property; (2) the Debtor had set forth on his Statement of Intention that he was not going to retain Copeland Street; (3) when he filed his petition, the Debtor believed that Shawmut would eventually foreclose its first mortgage on Copeland Street and transfer

title to the property to a party other than the Debtor; (4) the Discharge Order was entered in the Debtor's no asset case on April 17, 1994; (5) in October 1998, the City of Rochester commenced a special proceeding (the "Special Proceeding") in the New York State Supreme Court against the Debtor to recover the $14,325.15 in demolition costs which it had incurred in 1996 to demolish the two and one-half story wood frame structure constructed on Copeland Street, which had been determined to be dangerous and unsafe at a hearing conducted on May 12, 1994 (the "Demolition Hearing") and after a notice had been sent to the Debtor on May 25, 1994, and received by him on June 3, 1994, requiring him to either rehabilitate Copeland Street or demolish it; (6) in October 1993, prior to the filing of the Debtor's petition, the City had internally issued a building inspection report which indicated that the Demolition Hearing would be held and that the hearing might result in the demolition of Copeland Street if the Debtor failed to produce a bona fide rehabilitation plan at the time of the Hearing; (7) between the Demolition Hearing and June 1997, when the demolition costs were first demanded from him, the Debtor had received no notice of the imminent or actual demolition, and he believed that either the City of Rochester had taken title to Copeland Street for unpaid real estate taxes or Shawmut had foreclosed on the property and title had been transferred from him; and (8) any obligation which the Debtor might have to the City of Rochester to pay the demolition costs incurred by it in connection with Copeland Street was an obligation and debt that existed and was properly scheduled at the time of the filing of his petition, and, therefore, was discharged pursuant to Section 727.

On February 11, 1999, the City of Rochester, in response to the Contempt Motion, filed the affidavit of one of its attorneys. The affidavit alleged that: (1) Copeland Street was demolished in April 1996 after

---

1. The Notice to the City of Rochester was mailed to the attention of a specified individual in its law department.

the Debtor, who was still the record owner of the property, had failed to abate the existing and continuing public health and safety violations under the City of Rochester Municipal Code; and (2) the debt which the City of Rochester was attempting to recover in the Special Proceeding was not a pre-petition debt but was a debt which only accrued approximately two years after the Debtor had received his discharge.

On the return date of the Contempt Motion, the Court heard oral argument, reserved decision on the Motion, and allowed the parties the opportunity to file further written submissions.

On April 28, 1999, the attorneys for the Debtor filed a letter submission which asserted that: (1) the City of Rochester received proper and timely notice of the Debtor's Chapter 7 bankruptcy case; (2) the City of Rochester Municipal Code violations which ultimately resulted in the City of Rochester demolishing the structure at Copeland Street existed at the time the Debtor filed his bankruptcy petition; (3) the City of Rochester had a claim against the Debtor at the time of the filing of his petition for the costs the City would eventually have to incur to demolish the structure at Copeland Street, because, under Section 101(5), the City had a right to the payment of such amounts even though that right was contingent and the amounts were unliquidated; and (4) the debt due to the City of Rochester from the Debtor, as the result of his liability on this contingent unliquidated pre-petition claim, was properly scheduled and was discharged by the Discharge Order.

On April 30, 1999, the City of Rochester filed a letter submission by one of its municipal attorneys which asserted that: (1) On October 12, 1993, prior to the filing of the Debtor's petition, a City of Rochester property conservation inspector noted that the structure at Copeland Street was vacant, which resulted in a January 1994 inspection that indicated the existence of Municipal Code violations and made a recommendation that a structural inspection be conducted to determine whether the property was unsafe or dangerous; (2) the recommended structural inspection took place post-petition on February 17, 1994, which was also prior to the time the City of Rochester received notice that the Debtor had filed a Chapter 7 case;[2] (3) as a result of the structural inspection, the Commissioner of Community Development determined that the structure at Copeland Street was unsafe or dangerous; (4) once the Commissioner of Community Development had determined that the structure was unsafe or dangerous, an April 19, 1994 Notice of Hearing, issued after the entry of the Discharge Order, was mailed via certified mail to the Debtor on April 20, 1994, but not claimed by him; (5) on June 3, 1994, the Debtor signed a receipt for a copy of the Findings of the hearing officer at the May 12, 1994 Demolition Hearing (the "Findings") which had been mailed to him on May 25, 1994; (6) the Findings advised the Debtor that: (a) the structure at Copeland Street represented a hazard to public health and safety due to its unoccupied and neglected condition; and (b) if the structure were not repaired or demolished, as provided in the Findings, the City of Rochester would proceed to demolish the structure and could bill him for the cost of demolition; and (7) the City of Rochester did not have a pre-petition claim against the Debtor for the cost of demolition because any right to recover that cost from the Debtor did not accrue until at the earliest when the City had complied with Section 47a–16 of the Rochester City Code ("Section 47") by: (a) having the Demolition Hearing to determine that the structure at Copeland Street was unsafe or dangerous; and (b) notifying the Debtor, as the record owner, that unless he repaired the structure or demolished it, the City had the right to demolish it and recover the cost of demolition.

**2.** The undated structural inspection report indicated that the property had been vacant since October 1993. This apparently resulted in the Debtor's attorneys incorrectly concluding that the structural inspection had taken place pre-petition in October 1993.

## DISCUSSION

### I. *The Automatic Stay Provided by Section 362*

The Contempt Motion requested that the Court enter an order finding the City of Rochester in violation of the automatic stay provided for by Section 362 and for damages, presumably pursuant to Section 362(h) when there has been a wilful violation of the automatic stay. The relevant provisions of Section 362 for the purposes of the Contempt Motion are Sections 362(a)(1), (3) and (6), which provide as follows:

§ 362(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

11 U.S.C. § 362(c)(1), (3), and (6) (1999).

Also relevant to the Contempt Motion are the provisions of Sections 362(b)(4) and 362(c)(1) and (c)(2), which provide as follows:

§ 362(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970, does not operate as a stay—

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

11 U.S.C. § 362(b)(4) (1999).

§ 362(c) Except as provided in subsections (d), (e), and (f) of this section—

(1) the stay of an act against property of the estate under subsection (a) of this section continues until such property is no longer property of the estate; and

(2) the stay of any other act under subsection (a) of this section continues until the earliest of—

(A) the time the case is closed;

(B) the time the case is dismissed; or

(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time a discharge is granted or denied.

11 U.S.C. § 362(c)(1) and (2) (1999).

The Debtor has asserted that the City of Rochester's post-petition actions pursuant to Section 47 violated the automatic stay provided for by Section 362 because they: (1) included the commencement of proceedings against him that: (a) could have been commenced before the filing of·his bankruptcy case; and (b) were to recover a claim against him for the cost of demolition that arose before the filing of his bankruptcy case, since the unsafe and dangerous condition at Copeland Street existed pre-petition (Section 362(a)(1)); (2) were a series of actions to exercise control over the structure at Copeland Street, which was property of the estate (Section 362(a)(3)); or (3) were actions against him to collect, assess or recover a claim for the cost of demolition that arose before the commencement of this bankruptcy case (Section 362(a)(6)).

■ The first action taken by the City of Rochester pursuant to Section 47 was to conduct a structural inspection of the vacant structure at Copeland Street. This

structural inspection took place post-petition on February 17, 1994, which was a date before the Trustee filed his No Asset Report, so that Copeland Street was still property of the bankruptcy estate. However, in this Court's view, conducting a structural inspection of a vacant structure to determine whether it is unsafe or dangerous is an action by a governmental unit to enforce its police and regulatory power within the meaning and intent of Section 362(b)(4), and, therefore, is not a violation of the automatic stay. *See e.g., Brock v. Morysville Body Works,* 829 F.2d 383, 388 (3rd Cir.1987) ("The legislative history explains that paragraph (4) provides an exception to the automatic stay 'where a governmental unit is suing a debtor to stop violation of fraud, environmental protection, consumer protection, *safety,* or similar police or regulatory laws, or attempting to fix damages for violation of such a law.'")

█ The next action taken by the City of Rochester pursuant to Section 47 was taken on April 19, 1994 when it mailed the Debtor the Notice of the Demolition Hearing. In this Court's view, this action was also not a violation of the automatic stay because it was an action taken after: (1) March 25, 1994, when the No Asset Report had been filed, which resulted in the Trustee's abandonment of the Debtor's assets back to the Debtor and the termination of the automatic stay of acts against property of the estate pursuant to Section 362(c)(1) *See e.g., In re Sherrell,* 205 B.R. 20 (Bankr.N.D.N.Y.1997); *In re Ozer,* 208 B.R. 630 (Bankr.E.D.N.Y.1997); *Bromley v. Fleet Bank,* 659 N.Y.S.2d 83, 240 A.D.2d 611 (N.Y.App.Div.1997); and (2) April 17,

1994, when the Discharge Order was entered which terminated the automatic stay as to any other acts pursuant to Section 362(c)(2).[3]

Since none of the actions taken by the City of Rochester pursuant to Section 47 violated the automatic stay, the Contempt Motion, which only requested that the Court determine that the City of Rochester had violated the automatic stay provided for by Section 362 and award any resulting damages, must be denied.

However, the fundamental argument made by the Debtor in the Contempt Motion is that the actions of the City of Rochester pursuant to Section 47 were attempts by it to recover on a pre-petition claim that was discharged by the Discharge Order. Therefore, it appears that the Debtor actually wishes the Court to determine whether or not the City of Rochester's actions pursuant to Section 47 and its attempts by the Special Proceeding to recover the cost of demolition violated the discharge injunction provided for by Section 524(a)(2).[4]

## II. *Dischargeable Debt.*

The Debtor has asserted that the right of the City of Rochester to recover the cost which it incurred in demolishing the structure at Copeland Street was a contingent and unliquidated pre-petition claim within the meaning of Section 101(5)(a), and that this claim was discharged when the Discharge Order was entered.

The relevant statutory provisions are as follows:

§ 101(5) "claim" means—

(A) right to payment, whether or not such right is reduced to judgment,

---

**3.** All subsequent actions taken by the City of Rochester pursuant to Section 47 also took place after the automatic stay had been terminated pursuant to Section 362(c).

**4.** Section 524(a)(2) provides that:
(a) A discharge in a case under this title:
(1) voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328

of this title, whether or not discharge of such debt is waived;
(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived; and …
11 U.S.C. § 524(a)(2) (1999).

liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

11 U.S.C. § 101(5)(a) (1999).

§ 101(12) "debt" means liability on a claim;

11 U.S.C. § 101(12) (1999).

 We know from the decision of the United States Court of Appeals for the Second Circuit in *In re Chateaugay Corporation*, 53 F.3d 478, 496–97 (2nd Cir.), *cert. denied* 516 U.S. 913, 116 S.Ct. 298, 133 L.Ed.2d 204 (1995) ("Chateaugay"), and the cases cited therein, including *Pennsylvania Department of Public Welfare v. Davenport*, 495 U.S. 552, 110 S.Ct. 2126, 109 L.Ed.2d 588 ("*Davenport*"), that: (1) Congress intended the term "claim" in Section 101(5)(a) to have the broadest possible scope so that all legal obligations of the debtor would be dealt with in bankruptcy, *Davenport*; (2) the existence of a valid bankruptcy claim depends upon whether: (a) the claimant possessed a right to payment; and (b) that right arose before the filing of the petition, *Chateaugay*; (3) a right to payment is nothing less than an enforceable obligation, *Davenport*; and (4) a claim exists only if before the filing of the bankruptcy petition the relationship between the debtor and the creditor contained all of the elements necessary to give rise to a legal obligation and a right to payment under relevant non-bankruptcy law. *See In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex.1992).

 The Debtor makes much of the fact that many if not all of the City of Rochester code violations which ultimately resulted in the structure at Copeland Street being determined to be unsafe and dangerous, and later demolished, existed at the time of the filing of his petition, even though none of the City's actions under Section 47 were taken before the Debtor's petition was filed. Nevertheless, it is this Court's view that, notwithstanding the existence of certain code violations, until the City of Rochester completed the essential due process procedures required by Section 47, it did not have a right to recover the cost of demolition from the owner of Copeland Street, whether that was the Debtor, a mortgagee after foreclosure, the County of Monroe after a real estate tax foreclosure or a subsequent purchaser.

The right of the City of Rochester to recover the cost of demolition pursuant to Section 47 is a statutory right that depends upon the City completing all of the procedures set forth in Section 47, including conducting a demolition hearing and notifying the Debtor [5], who continued to be the owner of Copeland Street [6], of his options to rehabilitate the structure at Copeland Street or to demolish it, perhaps at a less expensive cost than that which might be incurred by the City. Until it complied, at a minimum, with the due process requirements of Section 47, the City did not have the ability to recover the cost of demolition.

Therefore, the City of Rochester did not have a pre-petition claim for the cost of demolition within the meaning and intent of Section 101(5)(a), and its actions pursuant to Section 47 did not violate the discharge injunction set forth in Section 524(a)(2).

### III. *Overview.*

 Debtors cannot avoid the responsibility and potential liability that continues to flow from owning unsafe or dangerous real property simply by filing a Chapter 7 case. Unless the property is disposed of by the Chapter 7 trustee, it will be abandoned or deemed abandoned back to the debtor who then will continue once again to have all of the responsibilities and liabilities that result from ownership, including those that result if the

---

5. Section 47 also requires notice to any mortgagee.

6. If the Debtor had followed through on his stated intentions and had been successful in surrendering this property, he would have never been liable for the cost of demolition.

property continues to be unsafe and dangerous. In this case, the Debtor's indication on the Statement of Intention that he intended to surrender the property to the mortgage holders, has no legal effect on his continuing ownership of the property after it was abandoned back to him. In fact, it appears that the Debtor did nothing to actually surrender the property to any of the mortgage holders by, for example, offering any one of them a deed in lieu of foreclosure.

### CONCLUSION

The Contempt Motion is in all respects denied, and the Debtor's case shall be reclosed automatically without further order of this Court when this Decision & Order becomes final and non appealable, or when all appeals have been completed.

**IT IS SO ORDERED.**