In re Kenneth JOHNSON, and Denise Pauline Johnson, Debtors.

No. 03–60911–7.

United States Bankruptcy Court, D. Montana.

Jan. 23, 2007.

Kraig C. Kazda, Hartelius, Ferguson, Baker and Kazda, Great Falls, MT, for Debtors.

Gary S. Deschenes, Deschenes Law Office, Great Falls, MT, for trustee.

## MEMORANDUM OF DECISION

RALPH B. KIRSCHER, Bankruptcy Judge.

In this case, the chapter 7 trustee, Gary S. Deschenes ("Deschenes"), of Great Falls, Montana, filed a motion for turnover of property by a custodian, doc. # 21, on September 30, 2006. On October 12, 2006, Debtors, through their attorney, Kraig C. Kazda ("Kazda"), of Great Falls, Montana, filed a response and requested a hearing on November 15, 2006. The Court conducted a hearing on November 15, 2006, in Great Falls. The parties stipulated on the record to two matters: the transcript of the Debtors from the April 24, 2003, § 341 meeting was admitted into evidence as Exhibit ("Ex.") 1; and the property (money) subject to this contested matter represents a prepetition asset. Deschenes and Kazda called only one witness to testify, namely: Denise Pauline Johnson, one of the Debtors. After the hearing, the parties requested the opportunity to brief the issues involved in this contested matter. The Court granted the parties time to file briefs concerning the effect of abandonment under 11 U.S.C. § 554(c). The briefs have been filed and this contested matter is ready for a decision. As discussed below, Deschenes's motion for turnover is denied; Debtors' objection to turnover is sustained. This memorandum of decision contains the Court's findings of fact and conclusions of law.

## FACTS

Debtors filed their bankruptcy case on March 27, 2003. Deschenes filed his report of no distribution on June 2, 2003, wherein he stated:

341 Meeting Held & Trustee's Report of No Distribution (Trustee of this estate reports and certifies that the trustee has performed the duties required of a trustee under 11 U.S.C. 704 and has concluded that there are no assets to administer) for the benefit of creditors of this estate. I have received no funds or property of the estate, and paid no monies on the account of the estate. Wherefore, the trustee prays that this report be approved and the trustee be discharged from office. (DESCHENES, GARY) (Entered: 06/02/2003)

The Court granted Debtors' discharge on June 24, 2003. The Court entered its final decree on June 27, 2003, discharging the trustee and closing the case. On August 2, 2006, Deschenes filed a motion to reopen, which by local rule is routinely granted without hearing. On August 3, 2006, The Court granted Deschenes motion to reopen. On September 30, 2006, Deschenes filed a motion for turnover of property by a custodian, with notice. As noted above, this motion for turnover is the subject of this contested matter.

Debtors' scheduled filed in this case on March 27, 2003, contain the following pertinent information: (1) Question 20 of Schedule B entitled "Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each[,]" states "None[;]" (2) Question 33 of Schedule B entitled "Other personal property of any kind not already listed. Itemize[,]" states "CLASS ACTION SUIT AGAINST ASSOCIATES [(]Location: In debtor's possession[)] [Joint] Current Market Value ... Unknown[;]" and (3) "Question 4 of Debtors'

Statement of Financial Affairs, in pertinent part, states (4) Suits and administrative proceedings, executions, garnishments and attachments. a. List all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case. . . ." Debtors responded "None[.]"

On April 24, 2003, Deschenes conducted the § 341 meeting. At the § 341 meeting Deschenes inquired, in pertinent part, as follows:

[Gary Deschenes]: Whats this class action suite (sic) against associates

[Denise Johnson]: Um I'm not We just got a letter from an attorney stating that they.

[Kenneth Johnson]: Something they charged on something that they weren't suppose to

[Denise Johnson]: State of Montana interest fees or because we had or original um mortgage through them and they were charging fees that they can't charge on them (inaudible)

[Gary Deschenes]: It just said do you want to be apart (sic) is that what your letter said?

[Denise Johnson]: Yeah if we (inaudible) Montana (inaudible) we would receive more if we went through California the most we would receive $125.

Ex. 1, page 2.

Deschenes concluded the § 341 meeting as follows:

[Gary Deschenes]: Thats all I have is there any creditors that wish to examine these debtors? None then were done thank you

Ex. 1, page 3.

At the hearing conducted in this matter on November 15, 2006, Deschenes inquired of Denise Johnson ("Denise"), who confirmed through testimony Debtors' prior responses to Question 20 and Question 33 of Schedule B and Question 4 to Debtors' Statement of Financial Affairs, as noted above. Denise further confirmed that Debtors file no amendments to the above questions. Denise testified that Debtors did not contact Deschenes or the Court before or after the closure of the case to provide information that the class action award may exceed the amount of $125.00. Denise testified that Debtors became aware of the class action approximately 8 years prior to the date of the hearing on November 15, 2006, through a letter from some attorneys. She further testified that Debtors did not respond to the attorneys' letter, but did receive some phone calls from attorneys about Montana and California lawsuits and did send their original mortgage documents to the Montana attorneys. Denise testified that she did not think Debtors were plaintiffs in any lawsuit at the time they filed the bankruptcy. Denise testified that Debtors received a letter in April or May 2006 that informed them that the class action suit had settled and that a distribution may occur in the first or second week of July 2006. Denise testified that the communication in April or May 2006 represented the first communication during the approximate 8 years that confirmed that an actual monetary award had been granted in the class action suit.

At the conclusion of the direct and cross examinations by Deschenes and Kazda, the Court inquired if Deschenes after the § 341 meeting ever made further inquiry about the class action suit with Debtors and ever attempted to contact the attorneys handling the class action suit. Deschenes responded that he had not made further inquiry as to who represented the plaintiffs in the class action and did not send any letters to any attorneys requesting that he be informed of the status of the

lawsuit as he did not think the value of the suit was economically feasible to pursue if the award was $125.00. Deschenes under questioning by the Court further stated that he did not attempt to get copies of the class action pleadings. Deschenes, under further questioning by the Court, admitted that he, based upon what he was told, allowed the abandonment statute to be in effect and allowed the abandonment to occur.

Recently, Deschenes further filed a motion to revoke technical abandonment on December 29, 2006, doc. # 31, and Kazda filed a response and request for hearing on January 8, 2007, doc. # 33, setting the contested matter for hearing on February 20, 2007, at 9:00 a.m., in Great Falls. The motion to revoke technical abandonment will be rendered moot by this decision.

## CONTENTIONS

Deschenes contends that Debtors failed to adequately inform him, as trustee, of the value of the class action lawsuit and that he had no further obligation to investigate the value. He further contends that Debtors should have amended their schedules to more adequately value the class action law suit. He also contends that the information provided to him was either false or incomplete.

Debtors contend they adequately described the class action lawsuit and where not further required to amend their schedules. Debtors also contend that Deschenes, as trustee, failed to take any action to administer the property prior to closing and allow abandonment to occur, which should not be revoked.

## DISCUSSION

The governing bankruptcy provision for the issue involved in this contested matter is 11 U.S.C. § 554(c), which provides: "(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." This type of abandonment constitutes a "technical abandonment" as under the provision the abandonment occurs automatically and without notice or hearing. *See DeVore v. Marshack (In re DeVore)*, 223 B.R. 193, 197 (9th Cir. BAP 1998).

The Bankruptcy Appellate Panel ("BAP") in *DeVore* analyzed the revocation of a technical abandonment by stating:

A number of cases recognize a general rule that abandonment is irrevocable, even if it is subsequently discovered that the abandoned property had greater value than previously believed. . . . The rationale for the general rule is that once an asset has been abandoned, it is no longer part of the estate and is effectively beyond the reach and control of the trustee. Courts have also noted the policy of preserving finality.

Notwithstanding the general rule, the prefatory language of § 554(c) "unless the court orders otherwise," indicates that courts have discretion to affect or prevent technical abandonment simply by ordering otherwise. The statute does not limit such an order to the period prior to case closure, and courts have set aside technical abandonments in "appropriate circumstances." "Appropriate circumstances" have been found where the trustee is given false or incomplete information about the asset by the debtor; the debtor fails to list the asset altogether; or where the trustee's abandonment was the result of a mistake or inadvertence, and no undue prejudice will result in revocation of the abandonment.

*Id.* at 198 (citations omitted), *See also Vasquez v. Adair (In re Adair),* 253 B.R. 85, 88–89 (9th Cir. BAP 2000), and *Cusano v. Klein,* 264 F.3d 936, 945–6 (9th Cir.2001). Based on the foregoing, three exceptions exist to the general rule of irrevocability of a technical abandonment: "(1) where the trustee is given false or incomplete information about the asset by the debtor, (2) where the debtor fails to list the asset altogether, and (3) where the trustee's abandonment was the result of a mistake or inadvertence, and no undue prejudice will result from revocation of the abandonment." *In re Gonzalez,* 302 B.R. 687, 691 (2003).

■ Based upon the facts in the case *sub judice,* the Court concludes for the following reasons that the exceptions noted above do not apply and the abandonment under 11 U.S.C. § 554(c) is irrevocable in this case. Debtors scheduled the class action lawsuit at question 33 of Schedule B at an unknown amount. The trustee inquired with Debtors at the § 341 meeting about the class action suit and then filed a no asset report and allowed the case to be closed. The facts are analogous to the facts recited in *Adair* and *Cusano* and distinguishable from the facts in *Gonzalez.*

In *Adair,* Debtor scheduled a personal injury lawsuit as follows in Schedule B: "Debtor . . . was involved in a slip and fall personal injury accident at work. Recovery is uncertain at this time. $20,000 is listed herein for exemption purposes only." *Id.* at 87. The trustee inquired at the § 341 meeting and requested additional information from debtor's personal injury attorney, who responded that any recovery was speculative and the case was in the beginning stages of litigation. The attorney invited the trustee to call with any further questions. Trustee made no further inquiries and filed a no asset case approximately a year later. The Court

closed the case. Approximately a month after closure, a first notice of settlement was filed in state court and the second notice of settlement occurred approximately eight months later. Debtor settled for $430,000. Trustee initiated an adversary proceeding approximately 3 years after case closure requesting that debtor turn over the proceeds. The bankruptcy court concluded that the information to trustee was not misleading and that the debtor did not have an ongoing duty to advise trustee of the developments in the lawsuit. BAP affirmed.

In *Cusano,* debtor in a chapter 11 case scheduled personal property as follows: "songrights in . . . Songs written while in the band known as 'KISS,' " which he assigned a value of "unknown." *Id.* at 942. The issue is this case, in part, involved whether a technical abandonment occurred of the songrights when his reorganization plan was confirmed. The circuit court concluded that an abandonment had occurred, entitling Cusano to postpetition royalties on his prepetition compositions and other damages accruing postpetition with respect to these prepetition compositions. *Id.* at 947. The court reasoned as follows:

> The bankruptcy code placed an affirmative duty on Cusano to schedule his assets and liabilities. *Id.* § 521(1). If he failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to Cusano. *See Stein v. United Artists Corp.,* 691 F.2d 885, 893 (9th Cir.1982) (holding that only property "administered or listed in the bankruptcy proceedings" reverts to the bankrupt); *accord Hutchins v. IRS,* 67 F.3d 40, 43 (3d Cir.1995); *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 526 (8th Cir.1991) (holding that property is not abandoned by operation of law unless the debtor

"formally schedule[s] the property before the close of the case").

"[T]he debtor has a duty to prepare schedules carefully, completely, and accurately." *In re Mohring,* 142 B.R. 389, 394 (Bankr.E.D.Cal.1992); *accord In re Jones,* 134 B.R. 274, 279 (N.D.Ill.1991); *In re Baumgartner,* 57 B.R. 513, 516 (Bankr.N.D.Ohio 1986); *In re Mazzola,* 4 B.R. 179, 182 (Bankr.D.Mass.1980). Although there are "no bright-line rules for how much itemization and specificity is required," Cusano was required to be as particular as is reasonable under the circumstances. *In re Mohring,* 142 B.R. at 395. If possible, Cusano was to list the "approximate dollar amount" of each asset. *See In re Wenande,* 107 B.R. 770, 772 (Bankr.D.Wyo.1989). If faced with a range of values, he was to "choose a value in the middle of the range." *In re Seruntine,* 46 B.R. 286, 288 (Bankr. C.D.Cal.1984). There are assets, however, the value of which is unknown; when that is the case, "a simple statement to that effect" will suffice. *In re Wenande,* 107 B.R. at 772.

Generally, "mistakes in valuation will not enable a trustee to recover an abandoned asset," *Hutchins,* 67 F.3d at 44, not even upon "subsequent discovery that the property has a greater value than previously believed." *In re McGowan,* 95 B.R. 104, 106 (Bankr. N.D.Iowa 1988); *accord In re DeVore,* 223 B.R. 193, 197 (9th Cir. BAP 1998) (recognizing the "general rule that abandonment is irrevocable"). Revocation of abandonment is appropriate, however, where "the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset." *In re Ozer,* 208 B.R. 630, 633 (Bankr.E.D.N.Y.1997); *accord In re Adair,* 253 B.R. 85, 89 (9th Cir. BAP 2000); *In re DeVore,* 223 B.R. at 198. The cases that contemplate such

action, however, indicate that the revocation may be effected only by express order after the reopening of the bankruptcy case. *See, e.g., In re Ozer,* 208 B.R. at 631; *In re Adair,* 253 B.R. at 88–89; *In re DeVore,* 223 B.R. at 198.

Cusano's listing was not so defective that it would forestall a proper investigation of the asset. Cusano scheduled "songrights in ... Songs written while in the band known as 'KISS.' " He listed their value as "unknown."

*Id.* at 945–6.

In *DeVore,* debtor filed a chapter 7 case and listed in Schedule B a lawsuit filed in state court. The trustee approximately 10 months later moved to employ special counsel for trustee to represent the estate in the state lawsuit on a contingency basis. Nearly two later, the state court litigation produced a judgment of $15,000 against Bank of America. The trustee filed 3½ months later a no asset report and the court closed the case. Two months later debtor contacted the trustee and inquired why the case was closed. Someone in trustee's office informed debtor that trustee did not believe the judgment was economical to administer. The estate employed attorney also informed debtor that the trustee had abandoned the asset. Bank of America issued a check payable to debtor, trustee and the estate's attorney. Everyone but the trustee signed the check and he moved to reopen the debtor's estate. The court reopened the estate and allowed the withdrawal of the no asset report. The estate attorney filed a fee application and the debtor moved for trustee to release the state court litigation proceeds to debtor. The trial court denied the motion to release the proceeds and approved the estate's attorney's fees. Debtor appealed. BAP reversed and remanded. After thoroughly analyzing abandonment as quoted above, the appel-

late court concluded that the order reopening the case and withdrawing the no asset report did not negate the technical abandonment and did not bring the lawsuit proceeds back into the estate as the court never expressly ordered otherwise.

In *Gonzalez,* the debtor listed real property located in Anaheim at $125,000 on Schedule A that served as collateral for a $60,000 secured claim. She claimed a $65,000 homestead exemption in the property. Trustee questioned debtor at the § 341 meeting about how debtor valued the property. Debtor's attorney informed the trustee that the property had been valued during her recent divorce. Trustee subsequently filed a no asset report and the court closed the case. Trustee approximately 10 months later moved to reopen the case to withdraw the no asset report, to revoke the abandonment and to administer the property as the trustee had received new information that the property value ranged from $275,000 to $290,000. Trustee argued that debtor misled him and alternatively that the abandonment was inadvertent. The court considered whether the trustee was effectively precluded from conducting a proper investigation "as a result of the information provided." *Id.* at 692. The debtor signed the petition under oath stating the fair market value of the property at $125,000, and the debtor and the debtor's attorney at the § 341 meeting confirmed the value under oath and through a statement from an officer of the court, debtor's attorney. "Trustee reasonably relied on the information provided by Debtor and her attorney and determined that administration of the Property would not benefit the estate." *Id.* at 693. The Court further considered the effect of F.R.B.P. 9024, incorporating FED.R.CIV.P. 60(b)(1), for mistake or inadvertence. The court allowed the revocation of a technical abandonment of the property.

In contrast to *Adair* and *Cusano, Gonzalez* involved facts wherein the debtor and debtor's attorney affirmed a specific fair market value that was substantially less than the actual fair market value. The court concluded the trustee could rely upon the specific value in the schedules and affirmed at the § 341 meeting. The debtor and debtor's attorney did not qualify their statements of value at the § 341 meeting. In *Cusano,* the debtor scheduled the asset at an unknown value, which was not misleading and encouraged further investigation. In *Adair,* the debtor scheduled the lawsuit with a recovery that was uncertain and only for exemption purposes at a value of $20,000. Again the information provided that the recovery was essentially unknown was not misleading to the trustee and he was not deprived of sufficient information to prevent him from performing his duties of investigation under 11 U.S.C. § 704.

At the § 341 meeting, the Debtors in the case *sub judice* did not affirm a specific value for the class action lawsuit against Associates, but informed the trustee that they had been told they would receive more through the Montana lawsuit than the $125 suggested for the California lawsuit as supported by the following inquiry at the meeting: "[Gary Deschenes]: It just said do you want to be apart (sic) is that what your letter said? [Denise Johnson]: Yeah if we (inaudible) Montana (inaudible) we would receive more if we went through California the most we would receive $125." The unknown value stated for the lawsuit in Debtors' Schedule B and the inquiry at the § 341 meeting provided the trustee with sufficient information to further investigate the status, the probability of an award and the estimated value given the merits of the case. Debtors at the time of filing their case did not have any more accurate information

for the value on the lawsuit proceeds. The trustee did not request additional information, did not pursue additional information from the class action attorney, and did not further investigate the merits of the lawsuit by even following up as to whether a class action suit had been initiated, whether a class had been designated and whether a class representative had been determined.

The Court further follows *Adair* in concluding that under the facts of this case Debtors were not required to provide additional information to the trustee unless the trustee expressly requested additional or ongoing information as § 521 and F.R.B.P. 1007(h) did not impose such an obligation on the Debtors for disclosed assets, such as the lawsuit proceeds described herein. Debtors do have an obligation to provide additional information on assets covered by § 541(a)(5) and F.R.B.P. 1007(h) or if the trustee specifically requests such information. *See Adair*, 253 B.R. at 90–1.

The Court concludes that trustee has not satisfied his burden that any of the exceptions to the irrevocability of the technical abandonment have been proven. Debtors' description of the class action lawsuit with an unknown value was not false or incomplete at the time Debtors' Schedules were filed rendering it "so defective that it would forestall a proper investigation of the asset." *Cusano*, 264 F.3d at 946. Debtors did not fail to list the asset as Schedule B includes a description of the lawsuit. The Court will not consider whether the trustee abandoned the asset as a result of mistake or inadvertence that may allow the Court to consider the elements of F.R.B.P. 9024, incorporating FED.R.CIV.P. 60(b)(1), as the motion to reopen and the motion for turnover have clearly been filed more than one year after Debtors' case was closed on June, 27, 2003. Furthermore, the trustee has not raised this exception of mistake or inadvertence in his motion or brief.

For the reasons and analysis set forth above, the Court, for cause, will issue a separate Order providing as follows:

IT IS ORDERED that Trustee's motion for turnover of property by a custodian is denied; that Debtors' objection to the motion for turnover of property is sustained; that the custodian, now the Clerk of Court, of the proceeds at issue shall remit to Debtors the prorata share of the class action proceeds and accrued interest, if any, to which they are entitled through separate Order of this Court; that Trustee's motion to set aside technical abandonment is denied; and that the hearing scheduled on Trustee's motion to set aside technical abandonment for February 20, 2007, at 9:00 a.m., in Great Falls is vacated.