**In re Fergus M. SLOAN, Debtor.**

**Roger BOYLE, as Trustee in Bankruptcy of Fergus M. Sloan, Plaintiff,**

v.

**Francis C. STEFURAK, Defendant.**

**Bankruptcy No. 880–08027–18.**
**Adv. No. 882–0842–18.**

United States Bankruptcy Court,
E.D. New York.

Aug. 26, 1983.

Winick & Rich, P.C., New York City, for defendant.

Roger Boyle, New York City, for plaintiff.

### DECISION

C. ALBERT PARENTE, Bankruptcy Judge.

Defendant, Francis C. Stefurak, moves for dismissal of the trustee's complaint on the ground that it fails to state a claim upon which relief can be granted. In essence, the defendant contends that the trustee has no standing to bring an adversary proceeding to set aside the transfer to the defendant of a certain finder's fee under 11 U.S.C. § 549 asserting that the finder's fee is not "property of the estate" under 11 U.S.C. § 541. In contraposition, the trustee argues that the motion should be denied contending that the finder's fee in question constitutes property of the estate.

### FACTUAL CONTEXT

The present controversy arises out of a transaction in which the debtor, Fergus M. Sloan, and, allegedly, the defendant, Francis C. Stefurak, earned a finder's fee by introducing Gilford Securities, Inc. ("Gilford"), a broker and underwriter, to National Patent Development Corporation ("National Patent") in late 1980. Prior to the filing by Sloan of his Chapter 7 petition and in or about December 1980, Gilford orally agreed to pay a finder's fee of an unspecified amount to Sloan and, allegedly, Stefurak for introducing Gilford to National Patent in connection with a proposed public offering of stock of Interferon Sciences, Inc. ("Interferon"), a subsidiary of National Patent. Payment of the finder's fee, however, was conditioned upon Gilford's underwriting the public offering.

On or about December 24, 1980, Gilford and National Patent entered into a nonbinding letter of intent, which confirms in principle Gilford's intent to underwrite a public offering of Interferon stock. Although the letter of intent states that Gilford might have to pay a finder's fee in the event that Interferon stock should be offered to the public, it contains no reference to Stefurak or Sloan and does not set forth the amount or manner of payment of the finder's fee.

On December 31, 1980, Sloan filed a petition for relief under Chapter 7 of the Bankruptcy Code. Prior to the filing, Sloan and, allegedly, Stefurak introduced Gilford to National Patent. On May 12, 1981, after the petition had been filed, Interferon entered into a formal underwriting agreement with Gilford.

In or about May 1981, a prospectus for the public offering of Interferon stock was filed with the Securities and Exchange Commission. Pursuant to the prospectus, one million shares of the common stock of Interferon were offered for sale to the public in May 1981. The prospectus identifies Gilford as the lead underwriter, and states that Gilford advised Interferon that Gilford agreed to pay the sum of $30,000 to Sloan and Stefurak in consideration for introducing Gilford to Interferon.

Subsequent to the effective date of the prospectus, Gilford issued a check for the finder's fee in the amount of $30,000 payable to Sloan and Stefurak. Sloan endorsed the check over to Stefurak. At the request of Sloan, Stefurak deposited the check in his own bank account and thereafter allegedly remitted Sloan's share to one Barbara Held.

By summons and complaint dated December 2, 1982, Roger Boyle, as trustee in bankruptcy of Fergus M. Sloan, commenced an

adversary proceeding against the defendant, Francis C. Stefurak. In his complaint, the trustee seeks to recover damages in the amount of $30,000 by reason of an alleged voidable postpetition transfer by Sloan to Stefurak of the finder's fee. In essence, the complaint alleges that: (1) Stefurak never performed any services entitling him to any portion of the finder's fee; (2) Stefurak retained the portion of the finder's fee to which Sloan was entitled in order to partially satisfy a prepetition loan made by Stefurak to Sloan; and (3) the finder's fee is property of Sloan's estate. Consequently, the trustee seeks to void the transfer of the finder's fee under section 549 of the Bankruptcy Code.

On or about January 13, 1983, Stefurak served his answer to the complaint, asserting *inter alia* as an affirmative defense that the complaint fails to state a cause of action upon which relief could be granted. Thereafter, Stefurak moved by notice of motion dated May 17, 1983 to dismiss the complaint on the ground that the trustee has no right or standing to maintain the adversary proceeding. The motion is predicated on Stefurak's contention that: (1) the finder's fee is not "property of the estate" under 11 U.S.C. § 541, and (2) therefore the debtor's transfer to Stefurak of one-half thereof cannot be set aside under 11 U.S.C. § 549.

Essentially, Stefurak asserts that at the instant of filing the debtor had no legal or equitable right to collect his finder's fee from Gilford, and therefore the trustee cannot be deemed to have such right. In support of his position, Stefurak argues that the finder's fee was unenforceable on the filing date because the oral agreement between Gilford and Stefurak: (1) was void under the statute of frauds; (2) was contingent upon consummation of the public offering; and (3) did not specify the amount or type of consideration.

### I. *Existence of a Contract*

■ While acknowledging that as of the filing date "Sloan and Stefurak had an oral understanding with Gilford that they would earn a finder's fee subject to the condition that Interferon stock was subsequently of-fered to the public in an underwriting by Gilford," Stefurak's Memorandum of Law filed 5/20/83, at 7, Stefurak suggests that no enforceable contract existed as of that time. Stefurak points out that the amount and type of consideration to be paid were not determined until after the debtor's petition was filed. However, it is clear that the parties intended that if a public offering by Gilford resulted from the efforts of Sloan and Stefurak, Gilford would pay them a finder's fee. Under New York law, where a term of a contract, such as consideration, is left for future agreement, the law will impute reasonable terms. *See Lauter v. W & J Sloane, Inc.,* 417 F.Supp. 252 (S.D.N.Y. 1976). Thus, the agreement between the parties constituted a contract under New York law despite the omitted terms.

### II. *Statute of Frauds*

Section 5–701(a) of the New York General Obligations Law provides in relevant part as follows:

> Every agreement, promise, or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
>
> \* \* \* \* \* \*
>
> 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction.

N.Y.Gen.Oblig.Law § 5–701(a) (McKinney Supp.1982–83).

■ The New York Court of Appeals has held that section 5–701, commonly known as the statute of frauds, applies to finder's fees. *Freedman v. Chemical Construction Corp.,* 43 N.Y.2d 260, 266, 401 N.Y.S.2d 176,

180, 372 N.E.2d 12, 15 (1977); *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 378, 300 N.Y.S.2d 817, 822, 248 N.E.2d 576, 579 (1969); *Minichiello v. Royal Business Funds Corp.,* 18 N.Y.2d 521, 527, 277 N.Y.S.2d 268, 272, 223 N.E.2d 793, 796 (1966), *cert. denied,* 389 U.S. 820, 88 S.Ct. 41, 19 L.Ed.2d 72 (1967). However, since the transaction in question involves a public offering of less than a "majority of the voting stock interest" of Interferon, *see* Prospectus, at 3, this court cannot find as a matter of law that the statute of frauds is applicable in the present context. Rather, Stefurak would have to establish that the stock issue constituted a controlling interest in Interferon. *Hiller v. Franklin Mint, Inc.,* 485 F.2d 48 (3d Cir.1973) (applying New York law); *Pass v. B.S.F. Co.,* 40 A.D.2d 813, 338 N.Y.S.2d 295 (1st Dept.1972); *Clivener v. Ackerman,* 51 Misc.2d 856, 274 N.Y.S.2d 112 (Sup.Ct., N.Y. County), *aff'd,* 30 A.D.2d 642, 291 N.Y.S.2d 759 (App.Div. 1968).

Assuming for discussion purposes that the contract in question is required to be in writing under section 5–701 of the General Obligations Law, the fact remains that the statute of frauds is an affirmative defense which may be deemed waived unless it is duly pleaded. *Ramme v. Long Island Railroad Co.,* 226 N.Y. 327, 332, 123 N.E. 747 (1919); *Crane v. Powell,* 139 N.Y. 379, 386, 34 N.E. 911 (1893); *Term Vehicle Leasing Corp. v. J.P.R. Auto Sales Corp.,* 77 Misc.2d 943, 355 N.Y.S.2d 253 (N.Y.C.Civ.Ct.1974); *see* N.Y.C.P.L.R. § 3018(b); *Shapiro v. Bromberg,* 198 Misc. 213, 97 N.Y.S.2d 777 (Mun.Ct.N.Y.C.1950). Thus, the contract in question was not void *ab initio,* and the debtor had certain rights thereunder at the time his bankruptcy petition was filed. The statute of frauds does not necessarily constitute a bar to recovery by the trustee, particularly where, as in the present case, the contract has already been honored by the party to be charged.

### III. *Property of the Estate*

Section 541(a)(1) of the Bankruptcy Code provides in pertinent part that property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The legislative history of section 541(a)(1) states that property of the estate is to be broadly construed, and includes "all kinds of property, including tangible or intangible property, causes of action ... and all other forms of property currently specified in section 70a of the Bankruptcy Act ...." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5868, 6323.

In construing an analogous, but less comprehensive, section of the former Bankruptcy Act, the Supreme Court held as follows:

> The main thrust of § 70a(5) is to secure for creditors everything of value the bankrupt may possess in alienable or leviable form when he files his petition. To this end the term "property" has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed.

*Segal v. Rochelle,* 382 U.S. 375, 379, 86 S.Ct. 511, 515, 15 L.Ed.2d 428 (1966) (citations omitted).

Stefurak's contention that in determining what is property of the estate the court should view the debtor's rights as absolutely frozen at the time his petition was filed is inconsistent with the spirit and intent of the Code. The legislative history provides that section 541 "is not intended to expand the *debtor's rights against others* more than they exist at the commencement of the case." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 367 (1977) [hereinafter "House Report"]; S.Rep. No. 95–989, 95th Cong., 2d Sess. 82 (1978) [hereinafter "Senate Report"] (emphasis supplied), U.S.Code Cong. & Admin.News 1978, pp. 5868, 6323. It is obvious that the quoted language seeks to prevent the trustee from improving his position vis-a-vis the third parties with whom the debtor has dealt. *U.S. v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 2313 n. 8, 76 L.Ed.2d 515 (1983). For example, the trustee could not commence an action after the debtor has allowed the statute of limitations to run. House Report, *supra* at 367–68; Senate Report, *supra.* On the other hand, section 541 was not intended to allow the Chapter 7 debtor to deprive

his creditors of the fruits of his pre-petition efforts. *See e.g.,* 11 U.S.C. § 541(a)(6).

In the present case, it is undisputed that the debtor fully performed his obligations under his oral contract with Gilford. The only contingency remaining at the time Sloan's bankruptcy petition was filed was the consummation of the public offering by Gilford. Under similar circumstances, Judge Herbert Katz held in *In re Scanlon,* 10 B.R. 245, 4 C.B.C.2d 557, 7 B.C.D. 538 (Bkrtcy.S.D.Cal.1981), that commissions attributable to the debtor's pre-petition performance under a real estate purchase contract constituted property of the estate under 11 U.S.C. § 541 notwithstanding the fact that the debtor's right to payment remained contingent until eleven days after the bankruptcy petition was filed.

■ The decisive factor in determining whether post-petition income of the debtor will be deemed property of the estate is whether that income accrues from post-petition services of the debtor. Section 541(a)(6) excludes from the bankruptcy estate "earnings from services performed by an individual debtor *after the commencement of the case.*" 11 U.S.C. § 541(a)(6) (emphasis supplied). Where a debtor derives post-petition commissions under a pre-petition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate. *In re Kervin,* 19 B.R. 190 (Bkrtcy.S.D.Ala.1982); *In re Selner,* 18 B.R. 420 (Bkrtcy.S.D.Fla.1982). Where, however, the debtor essentially fulfills all his obligations prior to the filing of his petition, the post-petition commissions accruing therefrom will be deemed property of the estate. *In re Semel,* 411 F.2d 195 (3d Cir.), *cert. denied,* 396 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *Mutual Trust Life Ins. Co. v. Wemyss,* 309 F.Supp. 1221 (D.Me. 1970); *In re Scanlon, supra; In re Parker,* 9 B.R. 447, 7 B.C.D. 456 (Bkrtcy.M.D.Ga. 1981); *In re Marshburn,* 5 B.R. 711, 2 C.B. C.2d 1089, 6 B.C.D. 922 (Bkrtcy.D.Colo. 1980); *see In re Wright,* 157 F. 544 (2d Cir.1907). In other words, the debtor's income passes to the trustee as property of the estate if all the acts of the debtor necessary to earn it are rooted in the pre-

bankruptcy past. *Segal v. Rochelle, supra,* 382 U.S. at 380, 86 S.Ct. at 515.

■ In accordance with the above-cited case law, the court finds that the debtor's share of the finder's fee constitutes property of the estate. Stefurak's reliance upon *In re Coleman,* 87 F.2d 753 (2d Cir.1937), is misplaced. Not only was *Coleman* decided under the more stringent standards of the former Bankruptcy Act, *cf.* Bankruptcy Act of 1898, § 70a *with* Bankruptcy Reform Act of 1978, § 541, but it involved a situation in which the bankrupt continued to perform services under his contingency fee contract after his bankruptcy petition had been filed. Thus, *Coleman* is patently distinguishable from the present case.

Having found that the debtor's share of the finder's fee is property of the estate which passes to the trustee, Stefurak's motion to dismiss the adversary proceeding is hereby denied.

Settle Order.