In re Paul Clayton JESS, Debtor.

Paul Clayton JESS, Appellant,

v.

Raymond CAREY, Trustee, Appellee.

BAP No. NC–97–1100–HRYME.
Bankruptcy No. 94–11500.
Adversary No. 96–1216.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Dec. 5, 1997.

Paul Clayton Jess, Sonoma, CA, pro se.

Ray H. Olmstead, Santa Rosa, CA, for Trustee Raymond Carey.

Before HAGAN, RYAN, and MEYERS, Bankruptcy Judges.

## OPINION

HAGAN, Bankruptcy Judge.

The Chapter 7 Trustee sought turnover of a portion of a contingency fee payment attributable to prepetition work performed by the Debtor, an attorney. The bankruptcy court granted the request and the Debtor appeals. We conclude that a portion of the fee earned prior to the Debtor's filing is an asset of the chapter 7 estate and AFFIRM.

## BACKGROUND

On June 23, 1994, Paul Clayton Jess ("Jess") filed a petition for relief under chapter 11,[1] in propria persona. Prior to the filing he entered into a contingent fee agreement in the "Klouds–Pacey litigation." Following his filing, Jess continued to perform services in the litigation generating $130,000 worth of work prepetition and an additional $35,000 postpetition. In June 1995, Jess collected $156,000 in fees from the litigation.

On December 4, 1995, the case was converted to a case under chapter 7 and the Appellee ("Trustee"), Raymond Carey, was appointed trustee. In July 1996, the Trustee filed a complaint to determine the nature and extent of the property of the estate. He asserted in the complaint that a portion of the fees received by Jess from the Klouds–Pacey litigation was property of the estate.[2] In his answer to the complaint Jess claimed the funds received constituted earnings from postpetition services and were, therefore, ex-

---

1. Unless otherwise indicated, all references to "chapter" or "section" are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330; references to "rule" or "Fed.R.Bankr.P." are to the Federal Rules of Bankruptcy Procedure 1001–9036, which make applicable certain Federal Rules of Civil Procedure (Fed.R.Civ.P.).

2. The Trustee sought approximately $25,000 and filed preference actions against creditors who had been paid with the proceeds.

cluded from the estate under section 541(a)(6).[3]

A trial to determine the nature and extent of the property of the estate was scheduled for January 15, 1997. At the trial Jess agreed, based upon his time charges, that 78% of the work was completed prior to the chapter 11 filing. He argued that pursuant to section 541(a)(6), no portion of the fees were property of the estate since he had no right to collect the funds on the date of the chapter 11 filing. He cited *In re FitzSimmons*, 725 F.2d 1208 (9th Cir.1984), for the proposition that postpetition earnings attributable to the debtor's personal efforts are excluded from the bankruptcy estate. He further made an offer of proof that no money would have been realized from the contingency if he had ceased working on the date he filed his chapter 11 petition. The bankruptcy court accepted the offer of proof, but found it to be irrelevant.

The bankruptcy court granted judgment for the Trustee. The court's memorandum of decision directed the clerk to file the proposed findings and conclusions, which represent the stipulated facts in this case. Jess timely filed a motion for a new trial that was denied the following day. He then timely filed this appeal.

## ISSUE

Whether the trial court erred when it found that some portion of the contingent fee was property of the estate.

## STANDARD OF REVIEW

We review a bankruptcy court's findings of fact under the clearly erroneous standard. *In re Pizante*, 186 B.R. 484, 488 (9th Cir. BAP 1995). A bankruptcy court's conclusions of law are reviewed de novo. *In re United States Trustee*, 32 F.3d 1370, 1372 (9th Cir.1994).

## DISCUSSION

An "estate" is created when a bankruptcy petition is filed. Sections 301, 302, 303 and 541(a); *In re FitzSimmons*, 725 F.2d 1208, 1210 (9th Cir.1984). Section 541(a)(1) provides that the estate is comprised of all legal or equitable interests of the debtor in property as of the petition date with certain limited exceptions. In sections 541(a)(2)–(7), Congress identified six specific classifications of what constitutes property of the estate. Section 541(a)(6) provides that the bankruptcy estate includes the "[p]roceeds, product, offspring, rents, and or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." *See In re Wu*, 173 B.R. 411, 413 (9th Cir. BAP 1994).

The Court of Appeals for the Ninth Circuit and the Bankruptcy Appellate Panel of the Ninth Circuit have applied section 541(a)(6) in situations involving postpetition earnings that arise, at least in part, out of prepetition services or prepetition property.

A practicing lawyer who contended his postpetition earnings were not property of the estate was also the debtor in *In re FitzSimmons*, 725 F.2d 1208 (9th Cir.1984). The Court of Appeals held only the debtor's earnings from his own personal services were exempt under 541(a)(6) as opposed to all profits generated by his law practice. Although a chapter 11 case, *FitzSimmons* fits into the analysis of the present case.

In *In re Ryerson*, 739 F.2d 1423 (9th Cir. 1984), the debtor was a district manager for an insurance company. His employment agreement provided that, if he were terminated, the employer would pay him "contract value" provided he had held the position for at least one year. The debtor served as district manager for approximately four years prior to filing a chapter 7 petition; he was terminated several months later. The debtor sought a declaratory judgment that the $18,500 in "contract value" was not prop-

---

**3.** Section 541(a) defines property of the estate to include:

. . . .

  6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

erty of the estate. The court rejected the debtor's contention that the estate had no interest in the "contract value" because he had not yet been terminated at the time he filed bankruptcy and his right to contract value was, therefore, unvested and contingent. *Id.* at 1425. Because the debtor's right to contract value was property of the estate, the court determined that any payments pursuant to that right were property of the estate, even though paid postpetition. The court indicated that the test of whether such postpetition payments were property of the estate is whether such payments are "sufficiently rooted in the pre-bankruptcy past" and concluded the termination payments "representing value for years of service completed prior to bankruptcy, and not being an arbitrary amount arising after bankruptcy," are property of the estate. *Id.* at 1426.

Similarly, in *In re Wu,* the Panel, relying on *Ryerson,* determined that postpetition renewal commissions for policies the debtor, an insurance agent, sold prepetition were allocable between the prepetition and postpetition services of the debtor. *Wu,* 173 B.R. at 413–16. The Panel rejected an approach focusing solely on whether the commissions were "dependent upon the performance of postpetition services." *Id.* at 414. According to the opinion:

> This all or nothing approach is inconsistent with *FitzSimmons* and *Ryerson,* which, in evaluating earnings having both a prepetition and a postpetition component, caution us to determine the extent to which the earnings are attributable to prepetition property or prepetition services. The proper analysis under *Ryerson* and *FitzSimmons* is to first determine whether any postpetition services are necessary to obtaining the payments at issue. If not, the payments are entirely "rooted in the pre-bankruptcy past" and the payments will be included in the estate. If some postpetition services are necessary, then courts must determine the extent to which the payments are attributable to the postpetition services and the extent to which

the payments are attributable to prepetition services. That portion of the payments allocable to postpetition services will not be property of the estate. That portion of the payments allocable to prepetition services or property will be property of the estate.

*Id.* at 414–15 (citations omitted).

Three possible factual situations exist when payment for services is received after filing a petition in bankruptcy. First, the funds in issue are totally prepetition earnings for personal services in which case they are property of the estate. Second, the funds are totally postpetition earnings for personal services in which case they are not property of the estate; and third, the funds fall partially into both prepetition and postpetition earnings in which case part of the earnings are property of the estate. The *Jess* case falls into the third category.

Other courts have similarly found that attorney contingent fee contracts were property of the estate. In *Turner v. Avery (In re Turner),* 947 F.2d 772, 774 (5th Cir.1991), the Fifth Circuit Court of Appeals faced the precise issue before the Panel. The debtor/attorney had cases pending on a contingent fee basis when he filed a petition for relief under chapter 7 in the bankruptcy court. Although the trustee sought all of the contingent fees later collected from the pending cases, the appellate court determined that only the portion of contingent fees earned prior to filing were property of the estate. The value of those contingent fees for cases subsequently settled or successfully litigated is determined as of the date of filing.[4] The court stated that based on premature valuation of contingent fees in other areas of law such a determination was " 'doable' both factually and legally." *Id.*

In *In re Bagen,* 186 B.R. 824, 830 (Bankr. S.D.N.Y.1995), *aff'd,* 201 B.R. 642 (S.D.N.Y. 1996), the court examined the broad reach of section 541 and determined that "[t]he fact that a debtor must continue to perform services after bankruptcy (as a condition prece-

---

**4.** Since the parties in this case have stipulated to the value of the prepetition services, further discussion of methods for valuation is omitted.

dent to payment) does not preclude a finding that the bankruptcy estate has an interest in the contingent contract right to future payment." *Id.*[5]

■■■ Thus, the bankruptcy court properly determined that some portion of Jess's contingent fee agreements were included in property of the estate. Of the Ninth Circuit authority, *In re Wu* is most analogous to Jess's situation. Although factually distinguishable, *Wu*'s allocation between prepetition and postpetition services applies here, as well. In addition, this approach is consistent with decisions from other jurisdictions.

According to *Wu*, the proper analysis under *Ryerson*[6] is for a court "to first determine whether any postpetition services are necessary to obtaining the payments at issue. If not, the payments are entirely 'rooted in the pre-bankruptcy past' . . . and the payments will be included in the estate." *Wu*, 173 B.R. at 414. If postpetition services are necessarily performed, then the court must determine "the extent to which the payments are attributable to the postpetition services and the extent to which the payments are attributable to prepetition services". *Id.* at 414. Under both *Ryerson* and *Wu* the fact that postpetition services are necessarily performed does not cause the right to payment for prepetition services to be excluded from the estate.

Jess performed additional postpetition services necessary to obtain the contingent fee; thus we go to the next step of the analysis according to *Wu*. In this case, both parties stipulated to the valuation of the prepetition services as determined by the bankruptcy court below. Therefore, the stipulated value of the prepetition services performed are included in the property of the estate.

In this appeal, Jess, who does not cite *Wu*, principally relies on language from *In re Tully*, 202 B.R. 481, 483 (9th Cir. BAP 1996) (quoting *In re Sloan*, 32 B.R. 607, 611

(Bankr.E.D.N.Y.1983)): "Where a debtor derives post-petition commissions under a prepetition contract, and such commissions are dependent upon the continued services of the debtor, they do not constitute property of the estate." Jess argues his right to receive any compensation was dependent upon postpetition services and thus all of the contingent fee earned was postpetition and excluded from the estate.

In *Tully*, a real estate broker sold property prior to filing a petition for relief in bankruptcy but was not paid until a closing of the escrow account postpetition. The broker argued that because he performed postpetition services (such as arranging financing for the purchaser), the commission was dependent on postpetition services and therefore not property of the estate. The Panel rejected this argument, stating that "[a]t the time of his petition, there was nothing left for [the debtor] to do." *Tully*, 202 B.R. at 484. Although the Panel recognized the broker performed some postpetition services, it relied on the bankruptcy court's factual findings that those services were not essential for the broker to be compensated. The postpetition services provided were a courtesy to the buyer to facilitate consummation of the deal, but were not necessary for payment. The buyer was responsible for finding financing himself as the broker was not contractually obligated to do so by either the sales contract or the commission authorization agreement. The Panel found the "bankruptcy court properly determined the commission to be a prepetition asset of the estate." *Id.* at 485. Therefore, *Tully* is a first scenario case where earnings paid postpetition were for prepetition services.

The language quoted in *Tully* from *Sloan* refers to the provisions of section 541(a)(6) exempting "earnings from services performed by an individual debtor after the commencement of the case." This provision does not apply to earnings received postpeti-

---

5. Jess points out that the *Bagen* court rejected the *Sloan* approach, while the BAP quoted *Sloan*, apparently with approval in *In re Tully*, 202 B.R. 481, 483 (9th Cir. BAP 1996). As mentioned below, *Tully*'s approval of *Sloan* was dicta. In addition, *Sloan*'s "all-or-nothing" approach was expressly rejected in *Wu*.

6. The *Ryerson* decision even interprets contingent claims not subject to payment until some future time as included within § 541(a).

tion for services performed prepetition.[7] The *Tully* Panel determined that funds received postpetition were property of the estate because the debtor had fulfilled his obligations prepetition. Thus, any indication that the result would have been different if some portion of the work had been completed postpetition is dicta and is not applicable to the third factual scenario where services are provided prepetition and postpetition although earnings are received postpetition.

Jess further argues property of the estate is determined by state law and under California law he would not have been entitled to the contingent fee had he not performed the postpetition services. He contends he would have no right to maintain an action in quantum meruit at the time he filed his petition, thus the Trustee could not have collected the fee. This argument does not affect whether the prepetition earnings are property of the estate under section 541(a). While state law may ultimately determine whether an asset is property of the estate, in the final analysis section 541(a) supplies the basic definition. Jess clearly held an interest in the prepetition earnings despite the fact he may have not been able to sue for recovery of the earnings at the time he filed the chapter 11 petition. That interest is property of the estate pursuant to § 541(a)(1). In fact, Jess acknowledged that if he had been fired on his petition date and the case had been successfully completed by another attorney, he would have been entitled to a portion of the fee.[8] Therefore, Jess had an interest arising prepetition that is property of the estate.

The bankruptcy court correctly found that some portion of the contingent fees are included in the estate. Since the parties stipulated to the value of those prepetition services, the court properly determined the allocation of the fees.

7. See the discussion above with *In re Wu.*

8. Jess also argues that the bankruptcy court failed to make factual findings sufficient to support the judgment. As mentioned above, the bankruptcy court adopted the trustee's proposed factual findings. According to Jess's opening brief, "the stipulations were limited to the amount of fees received in the Klouds–Pacey litigation ... and the respective percentages of

## CONCLUSION

The *Tully* court recognized the policy implications of its result: "a reversal of the bankruptcy court would allow [real estate] brokers to file bankruptcy petitions immediately before the close of escrow and have the commission deemed a post–petition earning, not property of the estate. This would clearly circumvent the intent of the Bankruptcy Code." *Tully*, 202 B.R. at 485. Similar considerations apply here. As the Southern District Court of New York stated when it affirmed *Bagen*:

> The Bankruptcy Code intends to recognize economic realities, and the economic realities are that the work already done on open cases had an economic value at the time of the filing of the petition, notwithstanding that collection of the fee could be subject to defeasance for a vast number of reasons, including neglect to complete the work, discharge for cause, or just losing at trial.

*In re Bagen*, 201 B.R. 642, 644 (S.D.N.Y. 1996). Here, as the bankruptcy court pointed out, Jess performed work prepetition for which he was paid postpetition. Although he had only a contingent interest in the fee, he had some interest which can be included in the bankruptcy estate.

For these reasons and those stated above, we AFFIRM.

pre-petition and post-petition services calculated on a time basis. No evidence was presented that absent the defendant's continuing post-petition personal services any monies would have been received from the Klouds–Pacey litigation." The bankruptcy court does not appear to have erred when it stated that Jess's proposed findings were irrelevant.