264 F.3d 936 (9th Cir. 2001)
 VINCENT CUSANO, INDIVIDUALLY D/B/A VINNIE VINCENT MUSIC, D/B/A STREETBEAT MUSIC F/K/A VINNIE VINCENT, PLAINTIFF-APPELLANT,
v.
GENE KLEIN, AN INDIVIDUAL; STANLEY EISEN, AN INDIVIDUAL; THE KISS COMPANY, A NEW YORK CORPORATION; GENE SIMMONS WORLDWIDE, INC., A DELAWARE CORPORATION; SIMSTAN MUSIC LTD., A DELAWARE CORPORATION; KISSTORY LTD.; POLYGRAM RECORDS, INC., A DELAWARE CORPORATION, DEFENDANTS-APPELLEES,
AND
HORIPRO ENTERTAINMENT GROUP, A CALIFORNIA CORPORATION, DEFENDANT.
VINCENT CUSANO, INDIVIDUALLY D/B/A VINNIE VINCENT MUSIC, D/B/A STREETBEAT MUSIC F/K/A VINNIE VINCENT, PLAINTIFF-APPELLANT,
v.
GENE KLEIN, AN INDIVIDUAL; STANLEY EISEN, AN INDIVIDUAL; THE KISS COMPANY, A NEW YORK CORPORATION; GENE SIMMONS WORLDWIDE, INC., A DELAWARE CORPORATION; SIMSTAN MUSIC LTD., A DELAWARE CORPORATION; KISSTORY LTD.; POLYGRAM RECORDS, INC., A DELAWARE CORPORATION; HORIPRO ENTERTAINMENT GROUP, A CALIFORNIA CORPORATION, DEFENDANTS-APPELLEES.
 No. 00-55536, No. 99-56131
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 6, 2001--Pasadena, California
Filed September 6, 2001
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 Counsel Richard H. Batson, II, Nashville, Tennessee, for the plaintiff-appellant.
 Brian G. Wolf, Lavely & Singer, Los Angeles, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California A. Howard Matz, District Judge, Presiding D.C. No. CV-97-04914-AHM-AJ; D.C. No. CV-97-04914-AHM
 Before: Harry Pregerson, William C. Canby, Jr., and David R. Thompson, Circuit Judges.
 
 Canby, Circuit Judge
 
 1
 Vincent Cusano, individually and under certain professional and business names, brought this diversity action against persons and companies associated with the famous rock'n'roll band KISS, alleging various claims for unpaid royalties, defamation, and infringement of his right of publicity. Cusano appeals the district court's grant of summary judgment in favor of Defendants. In his companion appeal, No. 00-55536, which we consolidate for purposes of decision, Cusano challenges the district court's award of attorney's fees and costs. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2106, and we affirm in part, reverse in part, and remand.
 
 FACTS AND PROCEDURAL BACKGROUND
 
 2
 Plaintiff Vincent Cusano, professionally known as Vinnie Vincent, is a professional musician, songwriter and publisher, and former lead guitarist of the rock'n'roll band KISS. Cusano, individually and under his business names Streetbeat Music and Vinnie Vincent Music, brought this diversity action in July 1997 against persons and companies associated with KISS. Cusano alleged fourteen causes of action, including claims for unpaid royalties from songs Cusano co-authored and performed for the band, and claims for defamation and infringement of his right of publicity arising from the release of two videos and a book about KISS.[1] Two of the central questions raised by the appeal concern the effect of Cusano's Chapter 11 bankruptcy on his royalty-related claims, and the effect of the statutes of limitations on his defamation and right-of-publicity claims.
 
 
 3
 The "KISS Defendants" include: The KISS Company, successor in interest to KISS; Paul Stanley and Gene Klein a/k/a Gene Simmons, individual members of the band; KISStory, Ltd., a corporation that merchandises a book about KISS; and Gene Simmons Worldwide, Inc. and SimstanMusic, Ltd., companies that administer copyright interests of band members. Other Defendants include: Polygram Records, Inc., publisher of certain songs co-authored by Cusano; and Horipro Entertainment Group, purported assignee of certain royalty rights to certain KISS compositions.
 
 
 4
 Cusano was the lead guitarist for KISS from 1982 until 1984, during which time Cusano co-authored and performed three songs for the 1982 KISS album "Creatures of the Night" and eight songs for the 1983 KISS album "Lick It Up." KISS and Cusano's publishing company, Streetbeat Music, executed co-publishing agreements in 1982 and 1984 covering these compositions, agreeing to share royalties evenly. Polygram allegedly administered the collection and distribution of royalties for KISS. Cusano alleges that KISS failed to honor certain provisions of the co-publishing agreements, and improperly exercised an option to purchase certain of Cusano's songrights, causing KISS wrongfully to receive and later assign to Horipro a portion of Cusano's rightful share of the royalties.
 
 
 5
 Cusano declared Chapter 11 bankruptcy in 1989. On the schedule for personal property, he listed "songrights in . . . Songs written while in the band known as `KISS,' " which he assigned a value of "unknown." Defendants Simmons and Stanley were listed as creditors possessing contingent and disputed claims in an unknown amount. Cusano's reorganization plan provided for a cash payment to the plan of $40,000, generally, and another cash payment of $1,521.60 to retain his songrights. The plan was confirmed in 1990 and Cusano was released from bankruptcy in 1993.
 
 
 6
 In 1992, although no longer a member of the band, Cusano co-authored three songs for the KISS album "Revenge." Cusano alleges that he never received royalties for the "Revenge" compositions because Defendants Klein and Stanley fraudulently attached a photocopy of his signature to an agreement purporting to assign his interest in the compositions to Gene Simmons Worldwide, Inc. and SimstanMusic, Ltd. Also in 1992, Cusano assigned part of his royalty rights in the "Creatures of the Night" compositions to Horipro, after which Horipro allegedly directed Polygram to pay Horipro more than its rightful share.
 
 
 7
 In 1994, the coffee-table book entitled "KISStory " was published, allegedly pursuant to a merchandising agreement between KISS and other non-parties for the production and distribution of an "authorized" and "limited edition" picture book about the rock band. Cusano alleges that his right of publicity was infringed because the book contains numerous photographs of Cusano that were utilized without his permission. Cusano further alleges that the book contains a defamatory reference to Cusano. His defamation claim also includes alleged defamatory statements that were published in two KISS videos released in 1987 and 1992.
 
 
 8
 Cusano filed the present action in July 1997 against KISS, individual band members, Polygram, and Horipro, in which he alleged claims for breach of fiduciary duty, fraud and deceit, constructive fraud, negligent misrepresentation, conversion, imposition of constructive trust, breach of contract, infringement on the right of publicity, defamation, and open book account for royalties.[2]
 
 
 9
 In December 1997, in response to Defendants' Rule 12(b)(6) and other motions, the district court transferred or dismissed several claims, in whole or in part. First, the district court severed all claims against Horipro and transferred them to the Southern District of New York, thereby removing from the case all of claim 7 for fraud and parts of claims 9 and 10 for conversion and imposition of constructive trust. Second, the district court applied California statutes of limitations to dismiss claims 2 through 5 for breach of fiduciary duty, fraud, and misrepresentation, to the extent that they arose before July 1994; claims 9 and 10 for conversion and imposition of constructive trust, to the extent that they arose before July 1997; claim 11 for breach of contract, to the extent that it arose before July 1993; and claim 14 for defamation, to the extent that it arose before July 1996.
 
 
 10
 Third, the district court dismissed entirely claims 6 and 8 for fraud, because Cusano failed to allege the reliance element and cited no authority allowing him to bring a claim for fraud upon a fiduciary. Fourth, as a consequence of dismissing claim 8 for fraud, brought against Klein, Stanley, Gene Simmons Worldwide, Inc., and SimstanMusic, Ltd., the district court dismissed claims 9 and 10 for conversion and imposition of constructive trust with respect to those same Defendants. Fifth, the district court dismissed in part claim 14 for defamation, holding that two of the four alleged defamatory statements are non-defamatory as a matter of law.
 
 
 11
 Finally, having previously taken notice of Cusano's Chapter 11 bankruptcy, the district court dismissed without prejudice all claims for royalties on the "Creatures of the Night" and "Lick It Up" compositions ("pre-petition compositions") which should have been paid prior to March 21, 1989 or for other damages which were incurred prior to March 21, 1989, the date Cusano filed his petition. The court found that Cusano had failed to schedule his claims for royalties and that the "songrights" asset he did schedule was vastly undervalued. Finding that these unscheduled claims "would appear to belong to the estate," the court informed Cusano that he could not proceed with these claims without first obtaining permission from the bankruptcy court. This ruling on Defendants' December 1997 motions resulted in at least partial dismissal of each of Cusano's fourteen claims.
 
 
 12
 In September 1998, with a new judge presiding over the case, the district court granted Defendants' motion for summary judgment on claim 11 for breach of contract, dismissing it in its entirety. The district court found that Cusano could not maintain this claim, in which he sought payment of artist's royalties for his performances with KISS, because he was not a member of the American Federation of Musicians ("AFM") during the time in which he was a member of the band, and thus had no standing to sue for breach of the AFM Labor Agreement.
 
 
 13
 In November 1998, with Cusano having yet to petition the bankruptcy court to release his claims, KISS Defendants and Polygram moved for summary judgment on all claims arising from pre-petition compositions. The district court granted the motion in February 1999, possibly unaware that Cusano had since moved the bankruptcy court in December 1998 to reopen his bankruptcy case. The district court held that Cusano lacked standing to assert claims based on facts and transactions predating his bankruptcy, including all claims for unpaid royalties, accruing either pre-or post-petition, from his pre-petition compositions. In accordance with this holding and summary judgment, the district court partially dismissed Cusano's claims for open book account (1st claim), breach of fiduciary duty (2nd claim), fraud and deceit (3rd claim), constructive fraud (4th claim), negligent misrepresentation (5th claim), conversion (9th claim), and imposition of constructive trust (10th claim).
 
 
 14
 Also in February 1999, the district court on its own motion dismissed Cusano's claim for infringement of his right of publicity (13th claim), and granted Defendants' motion for summary judgment on the defamation claim (14th claim). The court found that Cusano had admitted in his opposition to Defendants' motion for summary judgment that the right of publicity claim was based on pre-petition facts. The remaining portion of his defamation claim was dismissed as barred by the statute of limitations. These rulings resulted in the dismissal of these two claims in their entirety.
 
 
 15
 At this point in the proceedings, most of Cusano's remaining claims involved his post-petition "Revenge " compositions. KISS Defendants and Polygram moved for summary judgment in January 1999 on the ground that Cusano had been paid all sums due and owing. Cusano countered by alleging that his signature on agreements in which he purportedly assigned his interest in the "Revenge" compositions had been forged. The district court appointed a forensic examiner in March 1999 to determine the authenticity of the "Revenge" agreements. The court ordered Cusano either to submit a handwriting analysis report from the neutral examiner or to withdraw his dispute of the agreements and submit his opposition to the motion for summary judgment, limiting his arguments to the use of the "Revenge" compositions on the KISS album "Alive III" and two KISS videos. When Cusano failed to comply with the order by filing nothing, the court held that the "Revenge" agreements were valid and binding on Cusano and granted summary judgment for KISS Defendants and Polygram. This ruling resulted in the dismissal of all remaining portions of Cusano's claims 1 through 5 for open book account, breach of fiduciary duty, fraud, and misrepresentation; and claims 9 and 10 for conversion and imposition of constructive trust.
 
 
 16
 Meanwhile, Cusano's bid to reopen his bankruptcy case was unsuccessful. In April 1999, after a hearing at which KISS Defendants and Polygram also appeared, the bankruptcy court denied Cusano's December 1998 motion to reopen. The court stated that it would not reconsider the district court's findings that "any claims for unpaid royalties on prepetition musical compositions did not revert to debtor and that such claims were never formally abandoned to debtor." The court also stated that, "[a]ll claims based on facts predating Debtor's bankruptcy, including claims for unpaid royalties on prepetition musical compositions remain assets of the estate, and the Estate is Closed." Finally, because the reorganization plan was "fully consummated in 1993," the bankruptcy court found that it had no authority to allow Cusano to amend the plan. Cusano missed his deadline to appeal the decision to the Bankruptcy Appellate Panel.
 
 
 17
 In May 1999, the district court rendered final judgments on all of its prior dismissal orders and summary judgment rulings. The final judgment also disposed of the only claim not entirely disposed of by its prior orders--claim 12 for open book account--noting that it was effectively dismissed when the court dismissed claim 11 for breach of contract in September 1998. Noting that the bankruptcy court had refused to reopen Cusano's bankruptcy, the court went on to dismiss all fourteen claims for relief in their entirety with prejudice. From this ruling, and the award of attorney's fees and costs, Cusano appeals.
 
 DISCUSSION
 I. Pre-Petition Compositions
 
 18
 Cusano contends that the district court erred in granting summary judgmentdismissing for lack of standing all of his claims concerning his interests in pre-petition compositions.[3] We agree, in part. For Cusano to have standing, he, rather than the bankruptcy estate, must own the claim upon which he is suing. The question of ownership turns on the validity and effect of Cusano's listing of his "songrights " as an asset in his bankruptcy schedules. We conclude that Cusano's scheduled "songrights" asset reverted to him upon the confirmation of his reorganization plan--by technical abandonment and by express provision of the plan--and vested in him all post-petition royalty rights to his pre-petition compositions, despite his probable undervaluation of the songrights. He thus reacquired ownership of all claims to royalties derived from these compositions post-petition, but not claims for unpaid pre-petition royalties, which were required to be scheduled separately as either receivables or legal claims. Thus, we reverse the district court in part, and reinstate some of Cusano's royalty claims.
 
 
 19
 An "estate" is created when a bankruptcy petition is filed. See 11 U.S.C. § 541(a); In re Fitzsimmons, 725 F.2d 1208, 1210 (9th Cir. 1984). Property of a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." § 541(a)(1). This broad category includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." § 541(a)(6). Thus, postpetition revenues belong to the estate to the extent they are based on pre-petition services or agreements. See, e.g., In re Jess, 215 B.R. 618, 621 (B.A.P. 9th Cir. 1997); In re Wu, 173 B.R. 411, 414-15 (B.A.P. 9th Cir. 1994); Ryerson v. Rau, 739 F.2d 1423, 1425 (9th Cir. 1984). Accordingly, Cusano's future royalties from his pre-petition "Creatures of the Night" and "Lick It Up" compositions became assets of his bankruptcy estate. See In re Dillon, 219 B.R. 781, 784 (Bankr. M.D. Tenn. 1998); Waldschmidt v. CBS, Inc., 14 B.R. 309, 311-12 (M.D. Tenn. 1981). In addition, assets of the estate properly included any of Cusano's causes of action. See Sierra Switchboard Co. v. Westinghouse Elec. Corp. , 789 F.2d 705, 708 (9th Cir. 1986). The question presented here is what happened to these assets of the estate during and after their administration in bankruptcy.
 
 
 20
 Two separate sections of the bankruptcy code govern reversion of assets of the bankruptcy estate to the debtor. The first provision, which applies to all forms of bankruptcy, including Chapter 11, is the technical abandonment provision: "Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title." 11 U.S.C. § 554(c). The second provision is unique to Chapter 11 bankruptcies, and sets forth the effect of confirmation: "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor." Id. § 1141(b).
 
 
 21
 The bankruptcy code placed an affirmative duty on Cusano to schedule his assets and liabilities. Id. § 521(1). If he failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to Cusano. See Stein v. United Artists Corp., 691 F.2d 885, 893 (9th Cir. 1982) (holding that only property "administered or listed in the bankruptcy proceedings" reverts to the bankrupt); accord Hutchins v. IRS, 67 F.3d 40, 43 (3d Cir. 1995); Vreugdenhill v. Navistar Int'l Transp. Corp., 950 F.2d 524, 526 (8th Cir. 1991) (holding that property is not abandoned by operation of law unless the debtor "formally schedule[s] the property before the close of the case").
 
 
 22
 "[T]he debtor has a duty to prepare schedules carefully, completely, and accurately." In re Mohring , 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992); accord In re Jones , 134 B.R. 274, 279 (N.D. Ill. 1991); In re Baumgartner, 57 B.R. 513, 516 (Bankr. N.D. Ohio 1986); In re Mazzola, 4 B.R. 179, 182 (Bankr. D. Mass. 1980). Although there are "no bright-line rules for how much itemization and specificity is required," Cusano was required to be as particular as is reasonable under the circumstances. In re Mohring, 142 B.R. at 395. If possible, Cusano was to list the "approximate dollar amount" of each asset. See In re Wenande, 107 B.R. 770, 772 (Bankr. D. Wyo. 1989). If faced with a range of values, he was to "choose a value in the middle of the range." In re Seruntine, 46 B.R. 286, 288 (Bankr. C.D. Cal. 1984). There are assets, however, the value of which is unknown; when that is the case, "a simple statement to that effect" will suffice. In re Wenande, 107 B.R. at 772.
 
 
 23
 Generally, "mistakes in valuation will not enable a trustee to recover an abandoned asset," Hutchins, 67 F.3d at 44, not even upon "subsequent discovery that the property has a greater value than previously believed." In re McGowan, 95 B.R. 104, 106 (Bankr. N.D. Iowa 1988); accord In re DeVore, 223 B.R. 193, 197 (B.A.P. 9th Cir. 1998) (recognizing the "general rule that abandonment is irrevocable"). Revocation of abandonment is appropriate, however, where "the trustee is given incomplete or false information of the asset by the debtor, thereby foregoing a proper investigation of the asset." In re Ozer, 208 B.R. 630, 633 (Bankr. E.D.N.Y. 1997); accord In re Adair, 253 B.R. 85, 89 (B.A.P. 9th Cir. 2000); In re DeVore, 223 B.R. at 198. The cases that contemplate such action, however, indicate that the revocation may be effected only by express order after the reopening of the bankruptcy case. See, e.g., In re Ozer, 208 B.R. at 631; In re Adair, 253 B.R. at 88-89; In re DeVore, 223 B.R. at 198.
 
 
 24
 Cusano's listing was not so defective that it would forestall a proper investigation of the asset. Cusano scheduled "songrights in . . . Songs written while in the band known as `KISS.' " He listed their value as "unknown." His reorganization plan called for him to retain ownership of his "songrights." In a memo to the bankruptcy court, Cusano listed "songrights" as an asset being retained under the plan and listed its value as $1,521.60. He then noted that, in addition to $40,000 he had "already set aside . . . to pay creditors," he would "contribute cash representing the value of these songrights in the amount of $1,521.60." He concluded by noting that these amounts constitute "a fresh contribution which greatly exceeds the value of the property interest he is retaining."
 
 
 25
 The "songrights" asset as described by Cusano can reasonably be interpreted to mean copyrights and rights to royalty payments for songs written for the band KISS prepetition. The debtor in In re Dillon described a similar asset on her bankruptcy schedules as "songwriter's share of songs." 219 B.R. at 783. Although it would have been more helpful for Cusano to break down the description further so that it named songs, albums, and dates of and parties to royalty and copyright agreements, the additional detail would not have revealed anything that was otherwise concealed by the description as it was, which provided inquiry notice to affected parties to seek further detail if they required it. Any undervaluation of the "songrights" asset does not impair Cusano's interest in it, because only an express order of revocation after reopening of the bankruptcy case would do so, and that did not occur.[4] See In re Adair, 253 B.R. at 88-89; In re Ozer, 208 B.R. at 631.
 
 
 26
 We conclude, therefore, that his listing of the "songrights" asset was a sufficient scheduling of Cusano's interest in his pre-petition compositions, which reverted to him upon confirmation of his plan. The reversion vested in Cusano the rights to post-petition royalties on his pre-petition compositions and other damages accruing post-petition with respect to these pre-petition compositions. The district court erred when it applied to Cusano's case the general rule that post-petition revenues based on pre-petition services or agreements belong to the bankruptcy estate. In re Dillon, 219 B.R. at 784. The rule is simply not applicable here, because the actual pre-petition service or agreement at issue in this case, "songrights," reverted to Cusano's ownership.
 
 
 27
 Unpaid pre-petition royalties and other damages which accrued pre-petition, on the other hand, did not revert to Cusano with the "songrights" asset, because these were subject to a separate scheduling requirement as accrued causes of action. Causes of action are separate assets which must be formally listed. Vreugdenhill, 950 F.2d at 526. Simply listing the underlying asset out of which the cause of action arises is not sufficient. See id. at 525 (stating that debtor who scheduled parts as an asset failed properly to list a cause of action for failure to accept those parts).
 
 
 28
 Cusano contends that his royalty claims for pre-petition compositions involved an open book account, see Cal. Code Civ. Proc. § 337a, and thus no legal claim accrued until the entry of the last item, see § 337, well after his bankruptcy. We reject this contention. It is true that, generally, a debtor has no duty to schedule a cause of action that did not accrue prior to bankruptcy. Brassfield v. Jack McLendon Furniture, Inc., 953 F. Supp. 1424, 1433 (M.D. Ala. 1996); Erickson v. Baxter Healthcare, 94 F. Supp. 2d 907, 912-13 (N.D. Ill. 2000). To determine when a cause of action accrues, we look to state law. In re Folks, 211 B.R. 378, 384 (B.A.P. 9th Cir. 1997). It is important, however, to distinguish principles of accrual from principles of discovery and tolling, which may cause the statute of limitations to begin to run after accrual has occurred for purposes of ownership in a bankruptcy proceeding. In re Swift, 129 F.3d 792, 796, 798 (5th Cir. 1997).
 
 
 29
 We conclude that Cusano's open book account claim accrued for bankruptcy purposes to the extent that sums were owed on that account at the time he filed his petition. An action could have been brought for those sums at that time. Our conclusion is not affected by the fact that limitations on such an action had not yet begun to run. An action for open book account in California must commence within four years of the entry of the last item on the account. See Cal. Code Civ. Proc. § 337. Cusano's alleged open book account with Defendants has been open for years, and could continue to remain open for years to come. Cusano cannot avoid disclosing on his bankruptcy schedules a claim for an unpaid royalties balance, which was ascertainable and collectible when he filed his petition, simply because this claim does not accrue for statute of limitations purposes until the royalties dry up or payment is refused. Thus, if there was any outstanding balance due Cusano on the open book account when he filed for bankruptcy, he was under a duty to schedule it as a receivable or as a cause of action for unpaid royalties. His failure to do so vests the claim in the bankruptcy estate, where it remains.[5] The district court's decision that Cusano could not sue on his open book account claims was accordingly correct with regard to any sums owing at the time of petition. But Cusano retains standing to sue for any royalty payments coming due post-petition.
 
 
 30
 Finally, we reject Defendants' contention that the doctrine of res judicata bars Cusano's appeal of the district court's decisions concerning standing, because of the bankruptcy court's ruling that it would not reopen Cusano's bankruptcy nor reconsider the district court's findings. "The doctrine of res judicata bars a party from bringing a claim if a court of competent jurisdiction has rendered a final judgment on the merits of the claim in a previous action involving the same parties or their privies." In re Int'l Nutronics, Inc., 28 F.3d 965, 969 (9th Cir. 1994). The bankruptcy court simply denied Cusano's motion to reopen. The only res judicata effect of this denial is that the consequences of the prior closing will not be disturbed. Just as the mere reopening of a bankruptcy case is a ministerial act that "lacks independent legal significance and determines nothing with respect to the merits of the case," see In re Menk, 241 B.R. 896, 913-17 (B.A.P. 9th Cir. 1999), the mere refusal to reopen a bankruptcy case similarly has no impact on the property of the debtor or the estate. Any reference to the findings of the district court here was simply a statement that the bankruptcy court would not interfere with those findings. The district court made findings with regard to the consequences of the prior closing, and those findings, undisturbed by the bankruptcy court, are what are before us on appeal.
 
 
 31
 In sum, we conclude that Cusano sufficiently scheduled his "songrights," which vested in him upon confirmation of his Chapter 11 reorganization plan. Any undervaluation was not fatal, absent some sort of action in the bankruptcy court. All post-petition songright royalties are Cusano's property because he retains the "songrights" asset. Accordingly, we reverse the summary judgment in part and reinstate Cusano's claims 1 through 5 for open book account, breach of fiduciary duty, fraud, and misrepresentation; and claims 9 and 10 for conversion and imposition of constructive trust, to the extent they seek post-petition royalties relating to pre-petition compositions, or other damages that arose post-petition. Unpaid royalties that arose pre-petition, however, were subject to scheduling and should have been listed as either a receivable or as an existing cause of action. Because they were not scheduled, they remain dormant in the bankruptcy estate. The same result follows for all royalty-related claims, such as those for breach of fiduciary duty, fraud, and conversion, which arose pre-petition. We affirm the judgment of the district court with regard to these claims that had accrued by the time of the bankruptcy petition.
 
 II. Defamation
 
 32
 The district court dismissed Cusano's defamation claim on the ground that it was barred by the one-year statute of limitations. Cal. Code Civ. Proc. § 340(3). It is undisputed that the alleged defamatory statements, made in the video"KISS X-Treme Close-Up" and the book "KISStory," were published in their only editions in 1992 and 1995, respectively. Under the Uniform Single Publication Act, Cusano's claim accrued on the first general distribution of the video and the book to the public. Cal. Civ. Code § 3425.3. Cusano contends that the book and video were "republished" under an exception to the Uniform Single Publication Act, and also that the"rule of discovery" should be applied in this case to toll the statute of limitations, because he did not discover the defamatory statements until January 1997, six months before he brought suit. We reject these contentions, and affirm the district court's grant of summary judgment on the defamation claim.
 
 
 33
 No exception to the Uniform Single Publication Act applies here to save Cusano's defamation claim. All printings, over time, of the first hardcover edition of a book constitute a single publication. Fleury v. Harper & Row, Publishers, Inc., 698 F.2d 1022, 1028 (9th Cir. 1983). In contrast, the republication of a hardcover book in paperback gave rise to a new defamation claim in Kanarek v. Bugliosi, 108 Cal. App. 3d 327, 333 (1980), because the paperback form "was undoubtedly intended to and did reach a new group of readers." Cusano would extend Kanarek to cases where the same publication is marketed through different media, or sold at different forums, because each change of venue is an effort to reach a new audience. Although the policy reasons underlying the holding in Kanarek may promise broader application, Kanarek itself provided the rule (cited in Fleury) which governs this case: "all copies of the hardbound first edition of the book [give] rise to one cause of action ." Kanarek, 108 Cal. App. 3d at 332 (emphasis added). Cusano offers no authority to support treating video sales differently.
 
 
 34
 Neither does the "rule of discovery" apply here to toll the statute of limitations. A defamation claim "accrues upon the first general distribution of the publication to the public." McGuiness v. Motor Trend Magazine, 129 Cal. App. 3d 59, 61 (1982). Generally, the "statute of limitations will begin to run regardless of whether a plaintiff is aware that he has a cause of action." Johnson v. Harcourt, Brace, Jovanovich, Inc., 43 Cal. App. 3d 880, 896 (1974). Exceptions to this rule will be made in cases of fraudulent concealment, McGuiness, 129 Cal. App. 3d at 63, and in cases where the plaintiff could not have reasonably discovered the facts giving rise to his claim, Schneider v. United Airlines, Inc., 208 Cal. App. 3d 71, 77 (1989). Neither exception applies here. The district court correctly ruled that Cusano's defamation claim was time-barred.
 
 III. Infringement of the Right of Publicity
 
 35
 The district court dismissed, on its own motion, Cusano's claim for infringement of the right of publicity, on the ground that Cusano admitted that the claim was based on pre-bankruptcy facts and transactions and thus his standing to pursue the claim had to first be resolved by the bankruptcy court. We do not decide whether the district court erred in holding that Cusano should have scheduled his rights and interests in all photographs taken of him pre-bankruptcy, because we affirm on a separate ground--namely, that the statute of limitations bars this claim.
 
 
 36
 The subject of this claim is the book KISStory, published in January 1995. Under the single-publication rule, limitations began to run at that time. The statute of limitations for infringement of the right of publicity in California is two years. See Cal. Code Civ. Proc. § 339; Lugosi v. Universal Pictures, 25 Cal. 3d 813, 854 (1979) (dissenting opinion) (noting that neither party on appeal challenged trial court's determination of two-year statute of limitations for infringement of right of publicity). Cusano did not commence the present action until July 1997, well after the two-year statute of limitations had run. For the same reasons discussed above with respect to Cusano's defamation claim, neither the "rule of discovery" nor any exception to the Uniform Single Publication Rule saves this claim. It is time-barred.
 
 IV. Post-Petition ("Revenge") Compositions
 
 37
 The district court dismissed Cusano's claims for unpaid royalties on his "Revenge" compositions after (1) construing the "Revenge" agreements as valid and binding on Cusano because he failed timely to respond to a court order requiring a report on handwriting analysis and a supplemental opposition; and (2) granting Defendants' motion for summary judgment after deeming Cusano's failure to file a timely opposition to constitute consent to the granting of the motion. Cusano contends that a significant disputed issue of fact exists regarding whether he signed the "Revenge" agreements, and thus summary judgment was improper. We reject this contention and affirm, but do so on the strength of only one of the rulings of the district court.
 
 
 38
 The district court's summary judgment cannot be sustained solely on the ground that Cusano failed to file the supplemental opposition papers, permitting entry of judgment under Local Rule 7.9. A " `local rule that requires the entry of summary judgment simply because no papers opposing the motion are filed or served, and without regard to whether genuine issues of material fact exist, would be inconsistent with Rule 56, [and] hence impermissible under Rule 83.' " United States v. $273,969.04 U.S. Currency, 164 F.3d 462, 464 (9th Cir. 1999) (quoting Henry v. Gill Indus., Inc. , 983 F.2d 943, 950 (9th Cir. 1993)). We may affirm summary judgment, however, on any ground supported by the record. Olson v. Morris, 188 F.3d 1083, 1085 (9th Cir. 1999).
 
 
 39
 We conclude that summary judgment was appropriate because the district court properly construed the"Revenge" agreements against Cusano, thus leaving no genuine dispute of material fact with respect to the "Revenge " claims. According to the agreements submitted by Defendants, Cusano assigned all his rights to the "Revenge" compositions. The district court held the agreements valid and binding against Cusano because he failed to submit a timely handwriting analysis report and, alternatively, because he failed to file an opposition to Defendants' summary judgment motion. Cusano eventually submitted a version of the "Revenge " agreements that the district court admittedly could not reconcile with the Defendants' version, but he did so only after all relevant deadlines had passed. We interpret the district court's refusal to reassess its earlier grant of summary judgment to Defendants as a decision to strike Cusano's late-submitted evidence for failure to comply with a scheduling order. We review that ruling for abuse of discretion. Munoz v. Orr, 200 F.3d 291, 303 (5th Cir. 2000). Because Cusano inexcusably neglected to respond to the district court's order requiring him to act, the district court did not abuse its discretion by refusing to weigh Cusano's late-submitted evidence at summary judgment.[6]
 
 
 40
 Accordingly, we affirm the district court's grant of summary judgment on claims 1 through 5 for open book account, breach of fiduciary duty, fraud, and misrepresentation; and claims 9 and 10 for conversion and imposition of constructive trust, to the extent that they are based on the"Revenge" compositions.
 
 V. Fees Appeal
 
 41
 The district court awarded attorney's fees only with respect to the right of publicity claim, pursuant to Cal. Civ. Code § 3344. The fees were awarded to those KISS Defendants involved in the right of publicity claim, and to Polygram. Cusano appeals that ruling, and the award of costs, in companion appeal No. 00-55536, which we consolidate with the merits appeal No. 99-56131 for purposes of decision. Because we affirm the district court's ruling dismissing the right of publicity claim, we affirm the district court's award of attorney's fees. The KISS Defendants involved in the right of publicity claim and Polygram remain "prevailing parties" under Cal. Civ. Code § 3344 and thus they are entitled to attorney's fees.
 
 
 42
 Costs, on the other hand, were awarded to all Defendants in the district court, pursuant to Federal Rule of Civil Procedure 54(d)(1) and Central District Local Rule 16.1, and were not limited to the right of publicity claim. Because we have reversed the district court's grant of summary judgment to several Defendants on several claims in the merits appeal, we vacate all awards of costs and remand for a new determination of costs after other proceedings on remand.[7]
 
 CONCLUSION
 
 43
 For the foregoing reasons, we reverse the summary judgment on all claims related to the pre-petition compositions to the extent that they seek unpaid royalties that became payable after the filing of the bankruptcy petition or other damages that accrued post-petition. In all other respects, we affirm the judgment of the district court on the merits of Cusano's claims.
 
 
 44
 With respect to the companion fees appeal, we affirm the award of attorney's fees to Defendants who remain"prevailing parties" on the claim for infringement of right of publicity after our decision on the merits. We vacate all awards of costs, however, because we reverse summary judgment on several claims in the merits appeal.
 
 
 45
 The parties will bear their own costs in the merits appeal, No. 99-56131. Defendants are entitled to their costs in the fees appeal, No. 00-55536.
 
 
 46
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 Notes:
 
 
 [1]
 Cusano's claims were: (1) open book account--songwriter/publisher royalties; (2) breach of fiduciary duty; (3) fraud and deceit; (4) constructive fraud; (5) negligent misrepresentation; (6)-(8) fraud and deceit; (9) conversion; (10) imposition of constructive trust; (11) breach of contract; (12) open book account--artist royalties; (13) infringement of right of publicity; and (14) defamation.
 
 
 [2]
 An open book account is a detailed statement that constitutes the principal record of the transactions between the creditor and debtor arising out of a contract or fiduciary relationship. The statement details the debits and credits in connection with the debtor/creditor relationship. See Cal. Code Civ. Proc. § 337a.
 
 
 [3]
 We review de novo the district court's grant of summary judgment. Balint v. Carson City, 180 F.3d 1047, 1050 (9th Cir. 1999) (en banc).
 
 
 [4]
 The actual value of Cusano's future royalties under the songrights is not clear from the record.
 
 
 [5]
 Cusano had no duty to disclose a cause of action for post-petition royalties due on his pre-petition compositions, because those royalties had not accrued at the time of his petition. He had a duty to disclose other causes of action, such as those for fraud and deceit, to the extent that they had accrued at the time of his petition, and Cusano makes no argument to the contrary.
 
 
 [6]
 We also find no fault with the district court's ruling that, insofar as the claim was unaffected by the Revenge agreements, Cusano had presented no competent evidence of damages.
 
 
 [7]
 Defendants contend that the district court's judgment inadvertently failed to include its award of costs, and have moved in this court to have the judgment corrected. In light of our disposition of the merits appeal, we deny the motion as moot. After proceedings on remand a new judgment, with a new assessment of costs, will be entered.